No. 46,451

JANET FLOWERS, Administratrix of the Estate of Elva L. Brockman, Deceased, *Appellant,* v. HERBERT A. MARSHALL, Administrator of the Estate of Frank W. Frombaugh, Deceased, *Appellee.*

(494 P. 2d 1184)

Opinion filed March 4, 1972.

*John E. Shamberg,* of Schnider, Shamberg and May, of Kansas City, argued the cause and was on the brief for the appellant.

*Frank W. Saunders, Jr.,* of Wallace, Saunders, Austin, Allen, Brown and Enochs, of Overland Park, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an interlocutory appeal in a survival action brought on behalf of the estate of plaintiff's deceased who died from injuries caused by the negligence of defendant's deceased.

In a pretrial order the trial court ruled that future lost earnings could not be recovered as an element of damages, holding that damages for such item could only be recovered up to the time of death.

The trial court found that the ruling involved a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the termination of the litigation, pursuant to K. S. A. 60-2102 (*b*). Upon plaintiff's application to this court under our

Rule 5 relating to appellate practice permission was granted to appeal from the order.

As authorized by Rule 6 (*o*) the parties have submitted an agreed statement upon which the appeal is presented, which reads:

"The present appeal arises out of an automobile collision which occurred on August 10, 1969, on the Kansas Turnpike near the 65th Street Overpass, in Wyandotte County, Kansas, at about 10:00 o'clock P. M. On that date Elva L. Brockman, mother of the plaintiff-appellant, was riding as a passenger in a vehicle being driven by her son-in-law, Raymond L. Nichols. As Mr. Nichols proceeded easterly on the Turnpike, at the time and place indicated, a head-on collision occurred between his vehicle and the one being driven by defendant-appellee's deceased, Frank W. Frombaugh. Plaintiff-appellant's deceased sustained injuries in the collision which resulted in her death. Plaintiff-appellant, as Administratrix, has brought two actions as a result of her mother's injuries and death: The instant action brought by her as Administratrix of the estate of her mother for the damages sustained by her mother's estate, and another action which is not involved in this appeal, which she brings as the next of kin. for the wrongful death of her mother.

"The defendant-appellee admits that his deceased was driving his vehicle in a westerly direction in the east-bound lane of traffic on the Turnpike, and that the collision occurred between the vehicles at the time and place indicated, and admits the negligence of his deceased was the direct and proximate cause of the collision and that there was no contributory negligence on the part of Raymond L. Nichols or plaintiff-appellant's deceased.

"In the instant case, among the damages sought by plaintiff-appellant, are those for the lost earnings and earning capacity of her mother which can be proved, for her life expectancy undiminished by the event of her death as a result of the negligence of defendant-appellee's deceased.

"The Trial Court ruled on defendant-appellee's motion challenging the right of plaintiff-appellant to recover for future lost earnings and earning capacity beyond the date of death of plaintiff-appellant's deceased, that plaintiff-appellant could not recover damages in the survival action for future lost earnings and earning capacity of her deceased, Elva L. Brockman, beyond her death.

•  •  •

"The sole question presented on this appeal is whether the Administratrix of the estate of Elva L. Brockman, deceased, who admittedly died from injuries sustained as the result of the negligence of defendant-appellee's deceased, may recover damages for all lost wages and earning capacity which she would have earned during her normal life expectancy had she not met her untimely death."

By way of further background helpful to an understanding of the entire situation the record on appeal reveals that plaintiff's deceased, Elva L. Brockman, lived approximately one hour following the collision, then died as a result of the injuries sustained in the collision. During the period she lived after the collision she was conscious and experienced pain and suffering. As indicated, plain-

tiff, a daughter of Mrs. Brockman, has brought two actions as a result of her mother's injuries and death: This proceeding, a survival action pursuant to K. S. A. 60-1801, as administratrix of her mother's estate for damages in the sum of $146,000 sustained as a result of the injuries; and another, a wrongful death action pursuant to K. S. A. 60-1901, *et seq.*, in behalf of the next of kin for their damages in the sum of $37,059.93 for the mother's death.

The appeal presents a single question—whether recovery may be had in a survival action for loss of earnings and earning capacity beyond the time of the decedent's death where the death was caused by the defendant's negligence? The precise issue is one of first impression here.

K. S. A. 60-1801 provides in pertinent part:

"*Survival of actions; what causes of action survive.* In addition to the causes of action which survive at common law, causes of action . . . for an injury to the person . . . shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

Our wrongful death statute, K. S. A. 60-1901, provides:

"*Cause of action.* If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he lived, in accordance with the provisions of this article, against the wrongdoer, or his personal representative if he is deceased."

K. S. A. 60-1902 provides:

"*Plaintiff.* The action may be commenced by any one of the heirs at law of the deceased who has sustained a loss by reason of the death. . . . The action shall be for the exclusive benefit of all of the heirs who [have] sustained a loss regardless [of] whether they all join or intervene therein, but the amounts of their respective recoveries shall be in accordance with the subsequent provisions of this article."

K. S. A. 1969 Supp. 60-1903, in effect at the time of Mrs. Brockman's death, fixed the maximum amount of damages recoverable at $35,000.

K. S. A. 60-1904 provides:

"*Elements of damage.* Damages may be recovered for, but are not limited to: Mental anguish, suffering, or bereavement; loss of society, companionship, comfort, or protection; loss of marital care, attention, advice or counsel; loss of filial care or attention; and loss of parental care, training, guidance, or education, and the reasonable funeral expenses for the deceased. If no probate administration for the estate of the deceased has been commenced, expenses for the care of the deceased which resulted from the wrongful act may also be recovered by any one of the heirs who paid or became liable for the same.

Such expenses and also any amount recovered for funeral expenses shall not be included in the limitation of section 60-1903."

K. S. A. 60-1905 provides for an apportionment among the heirs of any amount recovered to be made by the trial court according to the loss sustained by each.

The trial court held that under the survival statute recovery is limited to losses of the victim prior to his death, that is to say, recovery is permitted only for elements of damage occurring prior to death, including the decedent's pain and suffering, medical expenses and loss of time and earnings from the date of injury to the date of death.

In its rationale the trial court pointed out that Kansas is one of a few remaining states which still maintains by statute an arbitrary ceiling on the amount recoverable in a wrongful death action, albeit that limitation has been periodically increased. The court expressed concern that if future earnings beyond the time of death were permitted to be recovered in a survival action there could be a duplication of recovery and the effect would be to circumvent the legislative limitation prescribed in the wrongful death statute, considering the two statutes as a part of a single legislative plan or *in pari materia.*

Plaintiff-appellant contends 60-1801 places no limitation on the damages recoverable; that it simply states the action survives; it preserves the right to claim all damages her decedent would have had had she lived, and the event of death has no bearing on those damages.

In support appellant points to the following language used in *Prowant, Administratrix, v. Kings-X,* 185 Kan. 602, 347 P. 2d 254, (which on rehearing reversed the initial decision in the same case):

". . . the survival statute, G. S. 1949, 60-3201, means just what it says; that an action for personal injury survives the death of the injured party, and that the cause of the death has no bearing upon the survival of the action." (p. 603.)

The *Prowant* decision on rehearing incorporated by reference the dissenting opinion contained in the first *Prowant case,* reported at 184 Kan. 413, 337 P. 2d 1021. The dissent had this to say about the predecessor of our present survival statute:

"At common law, one who had suffered injury to his person because of the alleged neglect of the defendant, as alleged in the case at bar, had a cause of action against the defendant sounding in the form of action of trespass on the case. But at common law such action did not survive the death of the plaintiff

or of the defendant. Section 60-3201, or section 420 under the old code, was enacted to remedy that situation and provide that the already existing action might survive and continue to be maintained regardless of the death of the parties. It will be noted that the section has never been qualified in any manner either under the old code or as now found in the statute book. The statute simply says the action survives." (p. 417.)

The dissent contained language indicating our survival and wrongful death statutes were not to be considered *in pari materia* because they had been enacted ten years apart (p. 418).

Appellant also emphasizes certain language quoted in the dissent from an opinion by Justice Brewer in *Hulbert v. City of Topeka,* 34 Fed. 510, as follows:

" '. . . the measure of damages and the basis of recovery under the two sections [survival and wrongful death] are entirely distinct.' " (p. 419.)

Appellant further points to language found in *Goodyear, Administratrix, v. Railway Co.,* 114 Kan. 557, 220 Pac. 282, respecting Lord Campbell's Act, upon which our wrongful death statute is patterned, as follows:

"This was held to create a new cause of action, one which arose only when death resulted from the injuries, and to permit the recovery of damages, different in their nature from those which could be recovered in an action brought by the injured person, viz.: the pecuniary damages sustained by the dependents by reason of the death of the injured." (p. 562.)

Nothing in the foregoing compels the conclusion sought by appellant, that is, that damages for all future lost earnings are recoverable in a survival action, for the reason that none of the cited cases was concerned with recovery of that item. In *Prowant* the ruling was simply that a cause of action for tortious injury survives death even though the death be the result of the tortious act causing the injury and may be maintained along with a wrongful death action. Resort to the survival action petition in that case discloses that damages were sought therein only for decedent's losses occurring between the time of injury and the time of death.

We are concerned here with determining legislative intent in the enactment of the two statutes—survival and wrongful death. Despite what might be otherwise inferred from certain language found in the *Prowant* dissent already referred to, we are convinced the two are *in pari materia* and should be construed together in an effort to ascertain what legislative pattern has been prescribed for recovery where a single tortious act results in injury and death. To be *in pari materia* statutes need not have been enacted

at the same time (2 Sutherland Statutory Construction [3d ed., Horack] § 5202, p. 537). In *Thoman v. Farmers & Bankers Life Ins. Co.,* 155 Kan. 806, 130 P. 2d 551, the court quoted approvingly this statement:

"'Statutes relating to the same subject, although enacted at different times, are *in pari materia* and should be construed together.'" (p. 810.)

Do the two statutes in question relate to the same subject matter for our purposes here? It should be borne in mind we are concerned with recovery for loss of future earnings or earning capacity beyond the point of death. The survival statute, where applicable, abrogates the common law rule that a personal right of action dies with the person. It keeps alive in the name of the personal representative the decedent's own cause of action. Loss of earnings or earning capacity is recoverable by the decedent in his life time and should he live so long he might recover for that permanent total loss, *based upon his life expectancy.* On the other hand the decedent's heirs at law may recover for loss of support under the wrongful death act. It cannot be gainsaid that destruction of earning capacity may form the basis for the claim for this loss of support. Hence both statutes can be said to relate to the subject of loss of future earnings and earning capacity and to that extent they must be deemed to be *in pari materia* and subject to being construed together as complementary enactments.

A doubling up would be involved if recovery based on full loss of future earning capacity were to be allowed in both a survival and a wrongful death action, and this would be true even though the ultimate beneficiaries in the two actions might not always be the same. Such duplication would be punitive to the wrongdoer and we cannot believe the legislature intended such a result, keeping in mind the fact that the survival statute and the wrongful death statute were each enacted to supply a remedy which did not exist at common law, and where, as here, each cause of action is dependent on the same tortious act.

Historically the majority view in other jurisdictions has been that recovery for loss of earnings or earning capacity beyond the time of death was impermissible in a survival action although it must be recognized statutory provisions sometimes are distinctive in the various jurisdictions so as to account for the results reached. The general rule is stated in McCormick on Damages, § 94, p. 337, thus:

"In states where actions may be brought by the personal representative of the deceased under the Survival Act for the injury, and under the Death Act for

the death, the damages in the survival action are limited to compensation for injuries actually accruing before death, that is, for the pain and suffering of the injured man and for his loss of earnings and his expenses of care and treatment."

In an annotation commencing in 42 A. L. R. 187, the annotator comments:

"Where, however, the remedy by revival of the pending action is not exclusive, but there also exists a right of action in behalf of certain designated persons to recover compensation for their pecuniary loss, a large element of which is loss of support, it is generally held that the injured person's earning capacity from the time of his death for the period of his life expectancy is to be the basis for assessing compensation for loss of support; hence, in the revived action, compensation for impaired or destroyed earning capacity is limited to the period of time intervening between the injury and the death. This seems to be necessary if double damages are to be avoided." (p. 188.)

Appellant acknowledges double recovery might be involved but asserts the problem can be avoided by the use of a limiting instruction at trial so as to prohibit duplication of damages but at the same time allow their full recovery. Indeed this approach has been taken in a few jurisdictions (see, *e. g., Rohlfing v. Moses Akiona, Ltd.,* 45 Hawaii 373, 369 P. 2d 96; *Incollingo v. Ewing et al., Appellants,* 444 Pa. 263, 299, 282 A. 2d 206). However, from the standpoint of judicial management of two separate claims, it is readily apparent this approach may create as many problems as it solves. More importantly, we think resort to the practice of limiting instructions overlooks the essential nature of our survival and wrongful death statutes as they have traditionally been viewed.

The interaction between the two statutes, according to the majority rule already alluded to, finds expression in 25A C. J. S., Death, § 98, as follows:

"There cannot and should not be any duplication of damages under a wrongful death statute and under a survival statute, so as to compel the payment of more than the maximum damage caused by the negligent act, since . . . under the survival statute recovery is limited to losses of the victim prior to his death, and under the death statute recovery is for pecuniary losses resulting to the beneficiaries from such death." (p. 898.)

This court has already dealt with an analogous situation. In *Railroad Co. v. Chance,* 57 Kan. 40, 45 Pac. 60, plaintiff's deceased, Finnegan, had commenced an action against his railroad employer for personal injuries allegedly sustained by him on December 1, 1890, as a result of its negligence. On October 18, 1891, he committed suicide. The action was revived in the name of his administratrix and trial was had. The trial court's instruction No. 21 dealt

with damages for diminished earning capacity. On eventual appeal respecting this issue the court held:

"Where the plaintiff, in an action for damages sustained from personal injuries, dies before the trial from a cause other than such injuries, and the action is revived in the name of his personal representative, damages for the permanent deprivation of health and of the capacity to work and enjoy life should be limited to the period between the injury and the death." (Syl. ¶ 5.)

In reaching this conclusion the court said:

"Instruction 21 was somewhat vague and uncertain as to the fourth element of damage, and it was this, no doubt, that caused the inquiry of the jury as to whether damages for permanent injury were limited to the actual lifetime of the person injured; and this called forth the further instruction of the court that such damages were not limited to the lifetime of Finnegan. In the answer of the jury to the particular question of fact regarding the length of time taken into consideration as a basis for an estimate, the jury evidently had regard to the expectancy of the life of Finnegan, although no evidence was introduced upon the subject. We think, however, that such evidence would not have been admissible, *for expectancy is only to be resorted to in the absence of certainty, and as the life of Finnegan was terminated before the trial, there was no basis for an estimate of damages extending beyond that period.* Damages for the permanent deprivation of health and of the capacity to work and enjoy life should therefore be limited to the period extending from December 1, 1890, to October 18, 1891." (p. 48.) (Emphasis supplied.)

In *Allen, Admr., v. Burdette,* 139 Ohio St. 208, 39 N. E. 2d 153, the action was for wrongful death and for personal injury under a survival statute, both arising from the same tort. The court held in the administrator's action under the survival statute that evidence of the decedent's prospective earnings had he lived the period of his normal expenctancy, as shown by mortality tables, was inadmissible because the right of recovery for earnings did not extend to loss of earnings extending beyond the time of death. The Ohio supreme court, citing our *Railroad Co. v. Chance,* supra, in support, said:

"The ground upon which evidence of prospective earnings of the deceased was sought to be introduced was that, if an action based upon a claim of permanent injuries had been instituted by the person injured, evidence would have been admissible to show his probable length of life and thereby furnish a basis of computation of the loss resulting from his inability to work and earn money from the time of his injury to the probable time of his death. However, a complete answer to this proffer of evidence is that, while it tends to show the probable length of life and the estimated time of death, it has no place in this case, for the actual time of death is established and it becomes unnecessary to deal in probabilities. Where death has actually occurred, the theory of prospective damages included in such survival claim has no place

whatever. Mortality tables are competent because they are regarded as the best evidence of life expectancy; but they have no applicability and their competency therefore disappears when there is no expectancy of life to calculate. Fact had been substituted for prophecy. Death is not a matter of the future; it had already occurred. What had been uncertain and speculative became definite and certain; what had been unknown became known. The loss sustained by an injured person accrues at the time of his death, and it is the wrongful death which gives rise to a cause of action on behalf of the designated next of kin.

"It must be concluded, therefore, that in the survivor action recovery by the administrator is limited to such damages as the deceased might have recovered had he lived, but for no loss of earnings extending beyond the time of his death." (pp. 210, 211.)

With the *Chance* rationale in mind, we see no sound reason to make distinction in survival actions between a situation where death results from independent causes and one in which the death results from negligence which can be the basis for a wrongful death action. There should be no greater recovery where one tortfeasor causes injury and death than where two tortfeasors separately cause those same casualties. A principal argument advanced by appellant for making a distinction lies in the fact there is a statutory ceiling on the amount of damages recoverable in a wrongful death action which conceivably could result unjustly in less than full recovery in a given case, but this situation properly must remain one for legislative redress.

Accordingly, we hold that in an action under the survival statute to recover damages for personal injury to plaintiff's decedent who died as a result of such injury, recovery may not be had for loss of earnings or earning capacity beyond the time of death.

The trial court reached the proper result and its judgment is affirmed.

APPROVED BY THE COURT.

PRAGER, J., not participating.