No. 48,015

FARM & CITY INSURANCE COMPANY, *Appellee and Cross-Appellant,*
v. AMERICAN STANDARD INSURANCE COMPANY OF WISCONSIN, *Appellant and Cross-Appellee.*

(552 P. 2d 1363)

Opinion filed July 23, 1976.

*John E. Rees,* of Kassebaum & Rees, of Wichita, argued the cause and was on the briefs for appellant and cross-appellee.

*Greer Gsell,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the brief for appellee and cross-appellant.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment of a district court construing certain provisions of the "Kansas automobile injury reparations act", commonly referred to as the no-fault insurance law. (K. S. A. 1975 Supp. 40-3101, *et seq.*) The judgment was based upon the trial court's interpretation of certain provisions of the act which would indicate what company holds primary coverage and has the obligation to pay survivors' benefits on the death of an occupant in an accident vehicle. In addition the judgment concerns those provisions of the act relating to the rights and liabilities to reimbursement and indemnity of insurance companies for payments made by them to survivors of a deceased occupant of an accident vehicle.

The facts necessary for a determination of the present controversy were stipulated by the parties and the case was submitted to the trial court for determination without a jury. The accident vehicle was owned and driven by Kurt R. Zimmerman. Zimmerman was insured by American Standard Insurance Company of Wisconsin. Danny Ray Tiller, a passenger in the accident vehicle, died on the way to the hospital as a result of his injuries. Tiller was the owner of another vehicle, not involved in the accident, and was insured by Farm & City Insurance Company.

The accident and death occurred in April, 1974, in the state of Kansas. Zimmerman and Tiller were residents of the state of Kansas. It was stipulated for the purposes of the action that Tiller's death was the direct and proximate result of the negligence of Zimmerman. The automobile policy issued to Zimmerman by American Standard and the automobile policy issued to Tiller by Farm & City contained identical coverage provisions for personal

injury protection (PIP). The phrase, "Personal injury protection benefits", means the disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits required to be provided in motor vehicle liability insurance policies under the Kansas automobile injury reparations act. (K. S. A. 1975 Supp. 40-3103 [q].) The policies of both companies stated that any terms of the policy in conflict with the Kansas automobile injury reparations act were amended to conform to such law. We will comment further on the provisions of the policies later.

Tiller was survived by his wife, Linda, and two small children, Paula and Patrick. The children were under the age of eighteen years. Farm & City paid $1,000.00 PIP funeral benefits and $2,522.20 PIP survivors' benefits to the wife on May 7, 1974 (thirty days after the death of Tiller). Farm & City then notified American Standard and Linda Tiller that it claimed rights of reimbursement and indemnification for PIP payments against any amounts Linda Tiller received from Zimmerman or American Standard.

Subsequently Farm & City paid additional survivors' benefits to Linda Tiller of $5,134.40 making the total paid $8,656.60. The latter sum was the maximum required under the limits of the Tiller policy.

American Standard refused to honor Farm & City's request, and on June 3, 1974, it settled Linda Tiller's wrongful death claim for $14,800.00 in exchange for a covenant not to sue for the elements of damage set forth in K. S. A. 60-1904 (the Kansas wrongful death statute).

Farm & City then filed this action seeking to recover the amount of the Tiller PIP benefit payments from American Standard. Basically Farm & City's claim is twofold. First, that American Standard had primary coverage for all the Tiller PIP benefit payments because Tiller was covered by the American Standard policy as a passenger in the accident vehicle. Second, that in any event Farm & City was entitled to reimbursement under the provisions of K. S. A. 1975 Supp. 40-3113 (b) because of American Standard's refusal to include Farm & City as a joint payee in the $14,800.00 settlement check to Linda Tiller.

As a result of the construction placed on various provisions of the act the trial court held that sub-section 40-3113 (a) does not create rights of reimbursement in favor of an insuring company for PIP benefits accruing after the death of an insured, i. e., for sur-

vivors' benefits. In other words it held that the reimbursement and indemnity provisions of the act are limited to PIP benefits payable to the injured person and accruing up to the date of his death. The court further held that under the policies and the act both companies provided identical PIP benefit coverage to Danny Ray Tiller while an occupant in the Zimmerman accident vehicle, and that under sub-section 40-3109 (*b*) Farm & City was entitled to recover from American Standard one-half, or $4,328.30, of the amounts it had paid.

Sub-section 40-3109 (*b*) provides for an equitable pro-rata sharing of liability if two or more insurers are liable to pay PIP benefits for the same injury to any one person. The trial court in effect required each company to bear the burden of one-half of the total PIP benefits payable under the act. The American Standard payment adjudged would be in addition to the $14,800.00 settlement it had paid on the Tiller tort claim.

Both insurance companies have appealed. American Standard, which insured Zimmerman and the accident vehicle, appeals from that portion of the judgment holding that American Standard provided PIP benefit coverage to the passenger Tiller. It denies any and all liability for the payments made by Farm & City to Tiller's survivors.

Farm & City cross-appeals from that portion of the judgment holding that sub-section 40-3113 (*a*) of the act does not create rights of reimbursement for PIP benefits accruing after the death of an insured, *i. e.,* survivors' benefits. It claims a right to full reimbursement from American Standard for all PIP benefits paid to Tiller's survivors.

Before considering the issues raised it will be helpful to review a few of the observations of this court with respect to this entire act as set forth in *Manzanares v. Bell,* 214 Kan. 589, 522 P. 2d 1291. In *Manzanares* the act withstood constitutional attack. At pp. 595 and 596 of that opinion it is stated:

". . . The operation of a motor vehicle on a highway of this state or property open to public use is prohibited, unless the prescribed liability insurance coverage is in force. . . .

. . . . . . . . . . . . . . .

Section 7 (*f*) requires that every liability insurance policy shall contain personal injury protection benefits. The section's phrase 'include personal injury protection benefits' *merges traditional third party liability insurance with first party coverage.* . . .

"*Direct benefits are provided* to the named insured, members of his family

residing in his household, guest passengers, and others operating the insured motor vehicle with permission, and to pedestrians struck by the insured vehicle. . . ." (Emphasis supplied.)

So it appears in *Manzanares* this court recognized that the PIP insurance required by the act was "first party coverage" with direct benefit payments coming from a party's own insurance company. It was pointed out that the tort liability insurance system, which had previously required an injured person to rely on the negligent third party's insurance coverage for personal injury protection, was considered by the legislature to be inadequate. As stated in *Manzanares* the purpose of the Kansas automobile injury reparations act is to make personal injury protection insurance mandatory by requiring every owner of a motor vehicle to obtain first party coverage for personal injury protection benefits payable by his own insurance company.

Now let us turn to the questions presented in this appeal. Both Zimmerman, the owner-operator of the accident vehicle, and Tiller, the passenger-victim in the accident vehicle, held separate policies of insurance providing identical PIP benefits. The first question to be answered is—Which policy of insurance covered the survivors' benefits which were required to be paid to Tiller's survivors under the act? Does the liability for payment of those benefits fall upon the injured person's insurance company or upon the insurance company insuring the accident vehicle?

For all intents and purposes in the present case the wording in both policies is identical. Each policy provides that the company will pay, in accordance with the Kansas automobile injury reparations act, personal injury protection benefits for expenses and loss enumerated, if incurred with respect to bodily injury sustained by an eligible injured person caused by a motor vehicle accident. An eligible injured person is defined in both policies as:

"1) the named insured or any relative who sustains bodily injury *while occupying, or* through direct physical contact with *while not occupying, any motor vehicle,* or

"2) any other person who sustains *bodily injury while occupying* the *insured motor vehicle or* through direct physical contact with the *insured motor vehicle while not occupying any motor vehicle;*" (Emphasis supplied.)

Under the exclusions set forth in these policies appears the following:

"This coverage does not apply:

"d) to bodily injury sustained by any person other than the named insured

if such person is the owner of a motor vehicle with respect to which security is required under the Kansas Automobile Injury Reparations Act;"

Other provisions of these two policies follow along the lines of the act itself setting forth definitions of the terms used, limits of liability, conditions for reimbursement and equitable sharing of the expense of payments if two or more companies are liable to pay PIP benefits for the same injury to any one person.

Now let us turn to pertinent provisions of the act itself. The following definitions are set forth under section 40-3103:

"($b$) 'Disability benefits' means allowances for loss of monthly earnings due to an injured person's inability to engage in available and appropriate gainful activity, subject to the following conditions and limitations: (1) The injury sustained is the proximate cause of the injured person's inability to engage in available and appropriate gainful activity; (2) subject to the maximum benefits stated herein, allowances shall equal one hundred percent (100%) of any such loss per individual, unless such allowances are deemed not includable in gross income for federal income tax purposes, in which event such allowances shall be limited to eighty-five percent (85%); and (3) allowances shall be made up to a maximum of not less than six hundred fifty dollars ($650) per month for not to exceed one (1) year after the date the injured person becomes unable to engage in available and appropriate gainful activity.

. . . . . . . . . . .

"($d$) 'Funeral benefits' means allowances for funeral, burial or cremation expenses in an amount not to exceed one thousand dollars ($1,000) per individual.

. . . . . . . . . . .

"($h$) 'Injured person' means any person suffering injury.

"($i$) 'Injury' means bodily harm, sickness, disease or death resulting from an accident arising out of the ownership, maintenance or use of a motor vehicle.

. . . . . . . . . . .

"($q$) 'Personal injury protection benefits' means the disability benefits, funeral benefits, medical benefits, rehabilitation benefits, substitution benefits and survivors' benefits required to be provided in motor vehicle liability insurance policies pursuant to this act.

"($x$) 'Survivor' means a decedent's spouse or child under the age of eighteen (18) years, where death of the decedent resulted from an injury.

"($y$) 'Survivors' benefits' means total allowances to all survivors for: (1) Loss of an injured person's monthly earnings after his death, up to a maximum of not less than six hundred fifty dollars ($650) per month; and (2) substitution benefits following the injured person's death. Expenses of the survivors which have been avoided by reason of the injured person's death shall be subtracted from the allowances to which survivors would otherwise be entitled, and survivors' benefits shall not be paid for more than one (1) year after the injured person's death, less the number of months the injured person received disability benefits prior to his death."

Section 40-3107 relates to required coverage in policies issued by an insurer to an owner of a motor vehicle residing in Kansas. It states, among other things, that every policy shall:

"(*b*) insure the person named therein and any other person, as insured, using any such vehicle with the expressed or implied consent of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of any such vehicle within the United States of America or the Dominion of Canada, subject to the limits stated in such policy;

. . . . . . . . . . . .

"(*f*) include personal injury protection benefits to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a motor vehicle, not exceeding the limits prescribed for each of such benefits, for loss sustained by any such person as a result of injury; . . ."

Section 40-3108 relates to authorized exclusions and provides in pertinent part:

"Any insurer may exclude benefits required by subsection (*f*) of section 7 [40-3107] of this act: (*a*) For injury sustained by the named insured and relatives residing in the same household while occupying another motor vehicle owned by the named insured and not insured under the policy, or for injury sustained by any person operating the insured motor vehicle without the expressed or implied consent of the insured; and . . ."

Subsection (*b*) which follows the above provision authorizes exclusions in specific instances not pertinent to our discussion and is therefore intentionally omitted.

Section 40-3109 specifies the injuries for which payment of benefits is required and provides for equitable pro-rata sharing of the expenses by two or more insurers liable for PIP benefits for the same injury to any one person. It reads in pertinent part:

"(*a*) A self-insurer or the insurer of the owner of a motor vehicle covered by a policy of motor vehicle liability insurance meeting the requirements of this act shall pay any personal injury protection benefits which are required to be provided by this act or in such owner's policy of motor vehicle liability insurance for any injury:

"(1) Sustained in this state by the owner while occupying a motor vehicle not excluded by subsection (*a*) of section 8 [40-3108], or while not an occupant of a motor vehicle if the injury is caused by physical contact with a motor vehicle;

"(2) [Not pertinent.]

"(3) sustained by a relative of the owner residing in the same household, under the circumstances described in paragraph (1) or (2) of this subsection, if the relative at the time of the accident is not himself the owner of a motor

vehicle with respect to which a motor vehicle liability insurance policy is required by this act;

"(4) sustained in this state by any other person while occupying such motor vehicle or, if a resident of this state, while not an occupant of such motor vehicle, if the injury is caused by physical contact with such motor vehicle and the injured person is not himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act.

"(b) If two (2) or more insurers or self-insurers are liable to pay personal injury protection benefits for the same injury to any one (1) person, the maximum benefits payable shall be the total of the various maximum benefits provided by this act, and insurer or self-insurer paying the benefits shall be entitled to recover from each of the other insurers or self-insurers an equitable pro-rata share of the benefits paid and expenses incurred in processing the claim."

Before passing over section 40-3110 we note it provides that PIP benefits due from an insurer under the act are primary and shall be due and payable beginning 30 days after the insurer is furnished written notice of loss. When read in conjunction with section 40-3103 (b) (disability payments) and 40-3103 (y) (survivors' benefits) we see that such benefits paid to the injured person up to the time of his death and to his survivors thereafter may be spread over a period of one year and made in monthly payments.

In construing this act we are mindful of the general rules of statutory construction. The various provisions of a statute in *pari materia* must be construed together with a view of reconciling and bringing them into workable harmony if it is reasonably possible to do so. (*Callaway v. City of Overland Park*, 211 Kan. 646, 508 P. 2d 902.) The fundamental rule of statutory construction, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute, even though words, phrases or clauses at some place in the statute must be omitted or inserted. (*Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 702, 366 P. 2d 219.) In construing a statute the legislative intent is to be determined by a general consideration of the whole act. Effect should be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*Fleming Company v. McDonald*, 212 Kan. 11, 16, 509 P. 2d 1162.) When a statute is susceptible of more than one construction it should be given the construction which, when considered in its entirety, gives expression to its intent and purpose

even though such a construction may not be within the strict literal wording of the statute. (*Gnadt v. Durr*, 208 Kan. 783, 785, 494 P. 2d 1219.)

As to our present case we have a provision in the act requiring the *owner* of the accident vehicle (Zimmerman) to *insure himself and any passenger* in such motor vehicle. (40-3107 [*f*].) We have a further provision in the act requiring any *person who owns a motor vehicle* (Tiller) to obtain insurance to insure himself both *as an owner and as an occupant of a motor vehicle.* (40-3109 [*a*] [1].) At first blush these appear to be separate provisions which result in duplicate coverage, and justify equitable pro-rata sharing of the expense of benefits due Tiller's survivors.

However, section 40-3109 (*a*) (4) of the act, relating to coverages for both occupants and pedestrians, contains a qualification on such coverage or coverages. The last phrase of this section imposes this qualification, ". . . and the injured person is not himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act." Because of the sentence structure and punctuation supplied by the legislature this phrase would appear to qualify the coverage as to pedestrians only. In other words, in order for a policy issued to the owner of the accident vehicle to extend coverage to a pedestrian struck by the owner the pedestrian must not own another vehicle covered by the act.

American Standard, the insurer of the present accident vehicle, contends this phrase of qualification was intended to apply to both an occupant and a pedestrian. American Standard reads the qualifying phrase in 40-3109 (*a*) (4) as if a comma and the word "provided" were inserted after the word "and". These suggested additions to punctuation and phraseology would clearly show that the final phrase was meant to modify both of the preceding clauses conjoined by the word "or". Under such a construction both an occupant and a pedestrian would be required to look to their own insurance company for payment of PIP benefits if they owned another vehicle covered by the act.

Section 40-3109 (*a*) (1) clearly requires the insurer of the owner of a motor vehicle to pay its insured for any injury suffered while an occupant of another motor vehicle or while he is a pedestrian. A construction of paragraph (4) of sub-section (*a*) as urged by American Standard would place the final modifying clause of that sub-section in harmony with paragraph (1) of sub-section (*a*).

This construction of the two provisions would be in line with the observations of this court in *Manzanares v. Bell,* supra, *i. e.,* that the act makes provision for first party coverage and direct benefits coming from an injured person's own insurance company. We further note that such a construction is in harmony with the provisions of 40-3109 (*a*) paragraph (3) relating to injuries sustained by relatives of the owner residing in the same household. Such relatives are not covered by the owner's insurance if such injured relative is himself the owner of a motor vehicle required to be insured under the act.

Throughout the act it appears the legislature intended every owner of a motor vehicle to carry his own PIP insurance and to look to his own company for payment. Insurance is made mandatory for each owner of a motor vehicle. In the act the legislature made certain that every owner of a vehicle could obtain the required PIP insurance for it set up an assigned claims plan. See section 40-3116. Under sub-section (*c*) of section 40-3116 the legislature sought to require compliance with the mandatory insurance provisions by providing that if you fail to have a policy in effect and own a motor vehicle for which insurance is required you are not entitled to personal injury protection benefits.

The trial court's interpretation of 40-3109 (*a*) (4), as to occupants and pedestrians injured by non-owned motor vehicles, if adopted by this court would lead to uncertainty in filing PIP benefit claims. The effect of the trial court's interpretation would be to require an injured pedestrian to look to his own insurance company if he owned a motor vehicle required to be insured under the act, but if he was injured as a passenger, he could look either to the insurance company insuring the accident vehicle or to his own company. As to any PIP benefits paid to such a passenger the two companies would have to pro-rate their expenses for the PIP benefits, but as to a pedestrian there would be no pro-ration. We can design no reason for such a different treatment and we do not believe the legislature intended such differences.

Accordingly we hold that the last qualifying provision in K. S. A. 1975 Supp. 40-3109 (*a*) (4), ". . . and the injured person is not himself the owner of a motor vehicle with respect to which a motor vehicle liability insurance policy is required under this act" modifies both preceding clauses separated by the conjunctive word "or"; such qualification relates to both an occupant and a pedestrian injured by another person's motor vehicle.

It might be noted in passing that in an analogous situation involving the construction of a contractual provision which contained two clauses separated by the word "or" and followed by a final clause introduced by the word "and", it has been held that the final clause may modify both preceding clauses. (See *Kansas City Structural Steel Co. v. L. G. Barcus & Sons, Inc.*, 217 Kan. 88, 92, 535 P. 2d 419.)

If the above construction of sections 40-3107 (*f*) and 40-3109 (*a*) is sound, and we believe it is, an obvious question presents itself. What effect, if any, does 40-3109 (*b*) have in the scheme of things? Sub-section (*b*) is the provision which relates to equitable pro-rata sharing of expenses of PIP benefits if two insurance companies are liable for the same injury to any one person. What is the purpose of such a provision if the injured person must look to his own insurance company? It is clear from this and other provisions of the act that the legislature intended to prevent double recovery of PIP benefits. This was recognized and pointed out in *Manzanares v. Bell*, supra. Why should the provision for sharing be in the act? Are there circumstances in which a person entitled to PIP benefit payments may have primary coverage with two or more companies? We believe there are. Many persons today own more than one motor vehicle. All such vehicles may not be insured under the same policy or by the same company. Section 40-3108 recognizes this and permits an insurer to exclude PIP benefits for injury sustained by the named insured while occupying another motor vehicle *owned by the named insured* and *not insured under the policy*. Sub-section 40-3109 (*b*) would apply to cases in which no such exclusion was placed in the policy. Also, when an owner holding policies with two or more companies is injured while an occupant in a friend's car, or is injured as a pedestrian, there can be dual liability placed on his own companies. It appears that sub-section (*b*) does have a sphere in which to operate and it is reasonably necessary under our construction of the act.

The final question raised on appeal concerns the district court's judgment holding that the provisions of section 40-3113 of the act, relating to an insurance company's rights of reimbursement and indemnity, do not apply to survivors' benefits paid after the death of an injured person. This section of the act is divided into two sub-sections: (*a*) speaks of subtraction by an insurance company from benefits due *an injured person* after recovery of damages

on a tort claim; ( *b* ) speaks of a right or reimbursement from an-other insurance company in certain instances.

Section 40-3113 in pertinent part reads as follows:

"( *a* ) No subtraction from personal injury protection benefits shall be made because of the value of a claim in tort based on the same bodily injury, but after recovery of damages by judgment, settlement or otherwise is realized upon any such tort claim, a subtraction shall be made to the extent of the recovery, less reasonable attorney's fees and other reasonable expenses in-curred in effecting the recovery, but only to the extent that *the injured person has recovered damages* from the tortfeasor or his insurer or insurers, which are duplicative of personal injury protection benefits payable. If personal injury protection benefits have already been received, the claimant shall repay to the insurer or insurers out of any such recovery a sum equal to the bene-fits received, but no more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, *but only to the extent that the injured person has recovered said damages* from the tortfeasor or his insurer or insurers which are duplicative of personal injury protection benefits received. The injured person's insurer or insurers shall have a lien on such recovery to this extent. *No recovery of damages by an injured person* or his estate shall be subtracted by an insurer in calculating benefits due after such person's death resulting from an injury for which the benefits were payable, and no recovery under K. S. A. 1973 Supp. 60-1903 shall be subtracted in calculating funeral benefits.

"( *b* ) An insurer having a right of reimbursement under this section, if suffering loss from inability to collect such reimbursement out of a *payment received by an injured person* upon a tort claim, is entitled to indemnity from one who, with notice of the insurer's interest, made such *payment to the injured person without making the injured person* and the insurer joint payees, as their interests may appear, or without obtaining the insurer's con-sent to a different method of payment.

"[The sub-sections which follow in this section are not pertinent. ]" (Em-phasis added.)

Farm & City has cross-appealed from the judgment of the trial court and contends the payment of the wrongful death claim ( $14,800.00 ) by American Standard to Tiller's survivors was dupli-cative of the PIP survivors' benefits payments. It further claims the payment was made by American Standard in disregard of the notice of Farm & City's claim for reimbursement, and that it should be entitled to full reimbursement from American Standard. Farm & City arrives at this conclusion in the following manner. Sub-section ( *a* ) of 40-3113 consists of four sentences. The first two sentences establish an insurer's right to reimbursement of PIP benefits recovered by insureds from tort-feasors or their carriers. The third sentence elevates this right of recovery to the status of a lien. The fourth sentence which contains the "no recovery pro-

vision" is glossed over by Farm. & City without discussion, and it thereafter concludes it is entitled to full reimbursement for PIP benefit payments made because of American Standard's refusal to include it as a joint payee of the $14,800.00 settlement check.

This particular section of the act is not without difficulty. We have no case law to guide us and the statutes and case law of other states are not helpful.

It must be kept in mind that the legislature in giving birth to the Kansas automobile injury reparations act was dealing with two separate and distinct types of action. The first (a survival action) is recognized in K. S. A. 60-1801 which provides in pertinent part:

"*Survival of actions; what causes of action survive.* In addition to the causes of action which survive at common law, causes of action . . . for an injury to the person . . . shall also survive; and the action may be brought notwithstanding the death of the person entitled or liable to the same."

This survival statute authorizes recovery of damages accruing between the injury and the death of the injured person. (*Flowers, Administratrix v. Marshall, Administrator,* 208 Kan. 900, Syl. 3, 494 P. 2d 1184.)

The second (a wrongful death action) is recognized in K. S. A. 60-1901 which provides:

"*Cause of action.* If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he lived, in accordance with the provisions of this article, against the wrongdoer, or his personal representative if he is deceased."

This second type of action is for the exclusive benefit of all the heirs who have sustained loss, and damages are those accruing after death.

The Kansas automobile injury reparations act provides for payment of benefits to the injured person which covers damages for the period between the injury and the death, and it also provides for payment of benefits to survivors which covers damages accruing to the survivors after the death of the injured person. (See *Flowers, Administratrix v. Marshall, Administrator,* supra.) This should be kept in mind in examining the act.

In *Manzanares v. Bell,* supra, at p. 617, this court said that 40-3113 was designed to prevent duplicative recovery, *i. e.,* to forestall *an injured party* from recovering PIP benefits from his own insurer and recovering for the same elements of damage against the tort-feasor or his insurer. Similar no-fault insurance acts adopted

by other states contain analogous provisions which prevent double recovery. (See 18A Fla. Stat. Ann., § 627.736 [3], and 17A Mich. Stat. Ann., 1976 Supp., § 24.13116.) These provisions for reimbursement stem from a 1965 study which is generally regarded as the foundation of most no-fault legislation. (Keeton & O'Connell, Basic Protection for the Traffic Victim [1965]; see also Note, Reimbursement Under Florida's No-Fault Law, 26 Fla. L. Rev. 534, 554 [1974].)

Keeton & O'Connell proposed no-fault automobile liability insurance legislation and suggested provisions to prevent double recovery for elements of damage by granting an insurer, who has paid *an injured party* for personal injuries, a right to reimbursement *if the injured party recovered* for the injuries from the tort-feasor or his insurer. (See Keeton & O'Connell, supra, § 1.10 [c] [2], p. 307.) It was recognized, however, that in cases where an injured party dies of his injuries following an automobile accident, two separate claims arise: one for the loss suffered by the injured person before his death and another for loss sustained by the survivors after his death. There is no overlapping between these claims and accordingly payment by an insurer for one claim does not entitle it to reimbursement if recovery is obtained from the tort-feasor or his insurer on the other claim. The existence of these two separate and distinct claims was recognized by the Kansas Supreme Court in *Flowers, Administratrix v. Marshall, Administrator,* supra.

To clarify the insurer's right to reimbursement and to allow an injured person, his estate and his survivors to recover for loss occurring both before and after his death the Keeton-O'Connell plan provided that an insurer could not subtract recovery by the injured person or his estate for loss suffered before death in calculating payments due a survivor after the death nor could a survivor's recovery be offset against payments for loss occurring before death. (See Keeton & O'Connell, supra, p. 307, and pp. 380-386.)

However, we note in section 40-3113 of our act it speaks of subtraction and reimbursement in terms of recovery of damages by the "injured person", not by the survivors, and provides that no recovery of damages by an "injured person or his estate shall be subtracted" in calculating benefits due after such person's death. The act specifically provides "no recovery under K. S. A. 1973 Supp. 60-1903 (wrongful death statute) shall be subtracted in calculating funeral benefits." Sub-section (*b*) relating to the right of reimbursement also speaks of payment received by an "injured person"

upon a tort claim. Nothing is said regarding payments received by survivors.

In the definitions section of the act (40-3103) under sub-section (*h*) an injured person means any person suffering injury, and under (*i*) an injury includes death resulting from a motor vehicle accident. Under sub-section (*x*) a survivor means a decedent's spouse or child under the age of 18 years. Under these separate definitions in the act we cannot include a "survivor" within the term "injured person". They have separate and distinct meanings. A survivor may be a claimant but a claimant is not included within the definition of an injured person.

It should also be pointed out that the "no recovery" provision appearing as the final sentence in 40-3113 (*a*) was inserted in the act in its present form by a special committee on motor vehicle accident reparations at a time when the proposed draft did not provide survivors' benefits. (See minutes of November 30, 1972, meeting of special committee on motor vehicle accident reparations on file with Legislative Research Department. See also proposed House Bill No. 1754 by Committee on Insurance, Session of 1972.)

At some later date when the act first received the attention of the 1973 legislature the provision for survivors' benefits was added (L. 1973, ch. 198, § 3.) but the "no recovery" provision remained unchanged. (L. 1973, ch. 198, § 13.)

Another matter which should be considered with regard to indemnification or reimbursement for PIP survivors' benefits is the interplay between the act and the wrongful death statute. There are differences both in the parties affected and the elements of damage recoverable. A survivor under the Kansas automobile injury reparations act is limited to a decedent's spouse or child under the age of 18 years. (40-3103 [*x*].) Survivors' benefits are allowances to these survivors for loss of an injured person's earnings and for appropriate expenses incurred in obtaining necessary services in lieu of those ordinarily performed by the injured person for the benefit of himself and family. No payments are included in such benefits for non-pecuniary loss such as mental anguish, et cetera.

However, under the provisions of K. S. A. 60-1901, *et seq.,* (wrongful death statute) the claim may be maintained by any one of the heirs-at-law who has sustained loss by reason of the death. This may include children over the age of 18 years and parents of a deceased person. (See *Leonard v. Kansas City Public Ser. Co.,*

167 Kan. 51, 204 P. 2d 760.) The elements of damage which can be recovered in such an action include non-pecuniary loss such as mental anguish, loss of companionship, loss of marital and filial care and other such items. (See K. S. A. 60-1904.)

In addition apportionment of the damages recovered in a wrongful death action may be made among the heirs-at-law as the judge shall direct. (See K. S. A. 60-1905.) No apportionment among the survivors receiving PIP benefits is provided for in the Kansas automobile injury reparations act.

Because of these differences it would seem practically impossible to distinguish that portion of damages received in a wrongful death tort action which was duplicative of PIP benefits paid to survivors. In the present case the $14,800.00 settlement with the wife and children was made by American Standard with no attempt to segregate the elements of damage. The payment of $14,800.00 was made to cover "all the elements of damage set forth in K. S. A. 60-1904." How could this or any court determine what portion, if any, of the $14,800.00 was for PIP benefits and what portion was for non-pecuniary loss? In omitting provisions for reimbursement and indemnity for survivors' benefits these problems were avoided by the legislature, and after considering the entire act we believe reimbursement and indemnity provisions were intentionally omitted as to survivors' benefits.

Accordingly we hold that section 40-3113 of the Kansas automobile reparations act, providing for an insurer's or self-insurer's rights of reimbursement and indemnity, does not apply to survivors' benefits payable under the act.

In summary we hold: (1) That the trial court correctly determined section 40-3113 does not provide rights of reimbursement for personal injury protection benefits paid to the survivors of the injured person; (2) that the trial court erred in holding exclusion (d) in the insurance policies was in derogation of the coverages required by the Kansas automobile injury reparations act; and (3) that the trial court erred in requiring pro-rata sharing of the expenses of PIP benefits paid to the survivors.

The judgment of the district court is affirmed on cross-appeal and reversed on appeal. The judgment in favor of Farm & City Insurance Company in the amount of $4,328.30 is reversed.