(689 P.2d 911)
No. 56,145

JUDY L. HYRE HOWARD, *Appellant,* v. CONNIE J. EDWARDS, *Appellee.*

Opinion filed October 11, 1984.

*James M. Sheeley,* of Kansas City, for the appellant.

*William P. Coates, Jr.,* of Rushfelt, Mueller, Druten and Moran, of Overland Park, for the appellee.

Before FOTH, C.J., ABBOTT and SWINEHART, JJ.

FOTH, C.J.: This is an appeal from an order denying attorney fees claimed to have been earned under K.S.A. 40-3113a(e) by recovering personal injury protection (PIP) benefits for plaintiff's insurer. The trial court's order was based on a finding that the "recovery" for which attorney fees was sought did not represent PIP benefits but instead constituted advance payment of damages under K.S.A. 40-275. Although the appeal has been prosecuted in the names of the parties to the original tort action, the only persons interested in the appeal are plaintiff's attorney, James M. Sheeley, and her insurer, State Farm Mutual Automobile Insurance Company.

The case stemmed from an automobile accident in Kansas City on February 22, 1981, in which defendant's car apparently rear-ended plaintiff's car. State Farm insured both vehicles. Plaintiff incurred medical bills and lost wages, and apparently made claim upon State Farm.

Some time prior to April 2, 1981, State Farm apparently reimbursed plaintiff $102.00 for broken eyeglasses. Between April 2

and August 6, 1981, State Farm made six additional payments totalling $4,795.12, for a grand total of $4,897.12. Each of the six payments was accompanied by a receipt itemizing the medical expense and lost wages it covered, and a running total of payments to date. Each was captioned "RECEIPT FOR EXPENSE ADVANCE," each bore the notation "This is Not a Release," and each recited "This amount is to be credited to any final settlement or to the amount payable under our policy for any judgment which you may obtain as a result of your accident on 2-22-81 at Rainbow Blvd., Kansas City, Kans." Each receipt was signed by plaintiff, and in some cases by her husband also, and returned to State Farm.

In November, 1981, and February, 1982, apparently after plaintiff employed counsel, State Farm made two additional payments totalling $213.00. It is agreed that these were PIP benefits. These payments will be separately dealt with later in the opinion.

In June, 1982, plaintiff filed suit and in March, 1983, the suit was settled for $12,400.00. A stipulation of dismissal and an order of dismissal with prejudice were filed. State Farm deducted its payments from the settlement amount and issued its draft for the net amount. Plaintiff and her husband signed a release.

Some six weeks later plaintiff's counsel filed his motion for attorney fees. The motion was heard on the statements of counsel and their memoranda, which included the six receipts for expense advances referred to above. The trial court found as a matter of fact that no PIP benefits were paid except the $213.00, and that as to that sum State Farm had waived its subrogation rights. The $4,897.12 paid to and receipted for by plaintiff before suit was found to represent advance payment of damages in accordance with the terms of the receipts. Because no PIP benefits were recovered by State Farm it owed plaintiff's attorney no fee.

On appeal plaintiff's counsel makes essentially two arguments. First, he says that as a matter of law State Farm was required to pay PIP benefits to its insured and could not evade that duty by making advance payments of damages under K.S.A. 40-275. Second, he says the payments were in fact PIP benefits, and that the insured should not be held to the terms of the receipts because of the unequal knowledge of the parties as to their legal

significance. The two arguments are interrelated, and under the facts of this case neither has merit.

The first argument is based on the assumption that the 1974 automobile injury reparations ("No Fault") act (K.S.A. 40-3101 *et seq.*) somehow supplanted or repealed by implication the 1967 enactment of K.S.A. 40-275. The general rule, however, is that "[s]tatutes relating to the same subject matter, although enacted at different times, are *in pari materia* and should be construed together." *Claflin v. Walsh*, 212 Kan. 1, 8, 509 P.2d 1130 (1973). Further, "[i]t is a well established rule in this jurisdiction that repeal of a statute by implication is not favored in the law," and "[s]tatutes are to be read and construed together so that force and effect may be given to all of them." *Harrah v. Harrah*, 196 Kan. 142, Syl. ¶¶ 1, 3, 409 P.2d 1007 (1966).

Is there an irreconcilable conflict between 40-275 and the no-fault act? We are unable to perceive any conflict at all. The former statute permits a tort defendant to make advance payment of damages to an injured party without the payment constituting an admission of liability. The payments are credited against any settlement or judgment, but may not be recovered in the event of a defendant's verdict. The statute obviously encourages prompt payment of injured persons' losses without waiting for the ultimate resolution of the tort claim.

Similarly the purpose of the no-fault act, as stated in K.S.A. 40-3102, "is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided therein." The act makes prompt compensation possible by providing that injured parties may seek payment from their own insurers for medical expenses, lost wages, etc., and that such insurance shall be primary. K.S.A. 40-3110(a). See *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291 (1974); *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 552 P.2d 1363 (1976).

The two enactments, then, seek to achieve the same end through different means: the one through prompt payment by the tortfeasor, the other through prompt payment by the victim's own insurance carrier. There is room for both statutes to operate without conflict. We cannot see why the availability of PIP benefits to an injured party should preclude a liability carrier

from recognizing liability and making prompt reparations. Likewise, assuming separate insurers, we see no reason for a PIP carrier to duplicate benefits being paid by a tortfeasor's liability carrier, and then promptly reclaim one or the other under its right of subrogation.

The only serious question arises where, as here, there is only one insurer wearing two hats. Was State Farm required to pay medical expenses and lost wages in its role as PIP carrier, or could it pay them in its role as liability carrier? It chose the latter, thus simplifying its bookkeeping. The only person adversely affected by the choice was plaintiff's counsel, who was thereby precluded from earning a fee for effectuating additional entries on State Farm's books. See *Ballweg v. Farmers Insurance Co.*, 228 Kan. 506, 618 P.2d 1171 (1980). To the injured plaintiff it would make no difference so long as the losses were being paid promptly, as they were, *and so long as they were within the limits of her PIP coverage,* which they were not. Because they were not, it was to plaintiff's advantage *not* to receive PIP benefits.

The last consideration brings us to counsel's second argument, that the payments were in fact PIP benefits under another name. The trouble with that argument is that plaintiff's PIP benefits for lost wages were limited by her policy to $650.00 per month, and State Farm paid her more than that. The receipts show:

| Payment & Date | Wage Period | Amount Paid |
|---|---|---|
| 4- 2-81 | 2/23-4/5 (6 weeks) | 1219.92 |
| 4-23-81 | Pay increase for prior period | 46.92 |
| | 4/6-4/26 (3 weeks) | 680.34 |
| 5-28-81 | 4/27-5/31 (5 weeks) | 1133.90 |
| 6-19-81 | 6/1-6/7 (1 week) | 226.78 |
| 6-30-81 | 6/8 (1 day) | 45.35 |
| | | 3353.21 |

The total period of lost wages was thus about 3 ½ months, and the maximum PIP benefits under plaintiff's policy would have been something between $2,275.00 and $2,437.50. Knowing full well the propensity of insurance companies to make no payments beyond the strict limits of their policies, the trial court was fully justified in concluding that State Farm's payments to plaintiff were *not* PIP benefits. Further, it was clearly to plain-

tiff's immediate benefit to receive a greater sum as advance payments of her damages under defendant's liability policy, rather than limited PIP benefits under her own policy.

Counsel suggests that in signing the advance payment receipts plaintiff was simply doing what her own insurance company told her to do, and that she did not intend to receive advance payments. The implication is of some sort of overreaching. The record, however, contains nothing of an evidentiary nature beyond the receipts themselves, which do nothing to support counsel's assertion. Neither is this a case where PIP benefits were paid and the insurer later decided to call them advances under K.S.A. 40-275. State Farm's intentions in this case were clear from the outset.

Finally, there is the matter of $213.00 of conceded PIP benefits paid after plaintiff's counsel was retained. State Farm stated below and in this court, and the trial court found, that State Farm waived its right of subrogation as to that amount. The record contains only statements of counsel as to the amount of the net settlement draft, but from them and from State Farm's brief on appeal it appears that the $213.00 in PIP benefits was nevertheless deducted, along with the $4,897.12 paid under K.S.A. 40-275. If so, State Farm owes plaintiff an additional $213.00, and any release given was based on mistake. Plaintiff's counsel, however, has not raised the issue on appeal. Neither has he ever separately claimed a fee for recovering the $213.00 for State Farm, if in fact he did so. Accordingly we leave the parties to work out what should be done about this item.

We conclude that the enactment of the no-fault law did not affect the right of an alleged tortfeasor or liability carrier to make advance damage payments under K.S.A. 40-275, and this right is not lost when the liability carrier is also the injured party's PIP carrier. When advance expense payments made under K.S.A. 40-275 are deducted from a subsequent settlement or judgment the insurer has not recovered PIP benefits and the plaintiff's attorney is not entitled to a fee for such an alleged recovery.

Affirmed.