No. 46,698

THE FLEMING COMPANY, a Corporation, *et al., Appellees,* v. JAMES
T. McDONALD, Director of Revenue, *Appellant.*

(509 P. 2d 1162)

Opinion filed May 12, 1973.

*William P. Coates, Jr.,* Assistant Attorney General, argued the cause, and
*Vern Miller,* Attorney General, *Edward G. Collister, Jr.,* Assistant Attorney
General, *Matthew J. Dowd,* Assistant Attorney General, *William L. Harris, Jr.,*
and *Bruce J. Gammon,* Attorneys, Department of Revenue, were with him on
the brief for the appellant.

*L. M. Cornish, Jr.,* of Glenn, Cornish and Leuenberger, of Topeka, argued
the cause, and *Edward B. Soule,* of the same firm, was with him on the brief
for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This is an action brought by the Fleming Company
and two subsidiary corporations, plaintiffs-appellees, seeking a
permanent injunction against the Director of Revenue, defendant-
appellant, enjoining him from levying and collecting any additional
tax upon cigarettes which Fleming had acquired, imprinted with
tax indicia, and paid tax on prior to July 1, 1970. The facts in this
case are not in dispute. Fleming and its subsidiaries are wholesale
grocery companies supplying retail dealers within the state of Kan-
sas. Fleming is a cigarette wholesale dealer licensed under the
provisions of K. S. A. 79-3301, *et seq.,* and supplies large quantities
of cigarettes to Kansas retailers. K. S. A. 79-3311 provides that a
cigarette wholesaler shall affix tax indicia to packages of cigarettes
and may do so either by stamps or meter imprints. Fleming utilizes

meter machines which affix imprints upon each package of cigarettes. The Director of Revenue, or his representative, sets and adjusts the meter machine for the amount of tax indicia to be acquired by the wholesaler. Each wholesaler is then charged the tax therefor. The statute provides that the wholesaler must remit payment of this tax to the Director within 30 days from the date from which the machine is set and adjusted. The parties have agreed that all taxes due on the cigarettes which are the subject of this action were paid within the 30 day statutory period and prior to July 1, 1970. At that time the cigarette tax was 8¢ per package.

K. S. A. 79-3311 permits a wholesaler utilizing a meter machine to post a statutory bond which enables the wholesaler to acquire imprints up to a tax figure of 85% of this bond, provided the amount of the tax is paid to the Director within 30 days.

Fleming regularly purchased large quantities of cigarettes from cigarette manufacturers and large quantities of meter imprints from the Director. Meter imprints were acquired regularly about twice each month and Fleming would promptly stamp cigarettes with the meter imprints so received. All cigarettes concerned in this litigation were acquired by Fleming prior to July 1, 1970; the meter imprints machine was set and adjusted by the Director prior to July 1, 1970; the cigarettes were imprinted with tax indicia prior to July 1, 1970; and the tax had been remitted to and collected by the Director prior to July 1, 1970.

The problem arises in this case by reason of the enactment by the legislature of K. S. A. 1970 Supp. 79-3310 which increased the cigarette tax from 8¢ per package to 11¢ per package effective July 1, 1970. The Director sought to collect an additional tax of 3¢ per package on all cigarettes which Fleming had acquired and stamped in the normal course of business on which the cigarette tax had already been paid but which cigarettes were still in inventory and had not been distributed to retailers prior to July 1, 1970. Fleming took the position that it had already paid the tax on these cigarettes and should not be required to pay the tax again. Fleming brought this action for injunctive relief to enjoin the Director from levying and collecting the additional tax upon the cigarettes described. The trial court found in favor of Fleming and issued a permanent injunction enjoining the Director from levying and collecting the additional tax. The Director has brought a timely appeal to this court.

A determination of the issues presented on this appeal requires us to construe certain provisions of the Kansas Cigarette Tax Law. We should consider the following statutory provisions:

"79-3302. Purpose of act. It is the purpose and intent of this act to levy a tax on cigarettes sold, distributed, conveyed or given away in this state, and to collect same from the wholesale or retail cigarette dealer, who first sells, distributes or conveys same in the state of Kansas. It is further the intent and purpose of this act that where a wholesale dealer or manufacturer's salesman gives away cigarettes for advertising or for any other purpose whatever, the same shall be taxed in the same manner as if they were sold in this state, and that said tax shall be paid in the manner prescribed by such rules and regulations as the director may require."

K. S. A. 1970 Supp. 79-3310 levies the tax and provides:

"79-3310. Tax on cigarettes. The following tax is hereby levied and assessed upon all cigarettes sold, distributed or given away within the state of Kansas: On each twenty (20) cigarettes or fractional part thereof, eleven cents (11¢) and such tax shall be collected and paid to the director as provided in this act. Said tax shall be paid only once and shall be paid by the wholesale dealer first receiving said cigarettes as herein provided.

"The taxes imposed by this act are hereby levied upon all sales of cigarettes made to any department, institution or agency of the state of Kansas, and to the political subdivisions thereof and their departments, institutions, and agencies."

It should be noted that the only change in 79-3310 made by the 1970 legislature was to increase the cigarette tax by changing the words "eight cents (8¢)" to "eleven cents (11¢)."

K. S. A. 1970 Supp. 79-3311 sets forth the procedure for the affixing of indicia of tax payment on each pack of cigarettes and for collection of the tax from the wholesaler. The specific provisions are as follows:

"79-3311. Stamps and meter imprints; sale; discount; corporate surety bond; tax meter, use and bond; cigarette tax refund fund established; transportation for out of state sale. The director shall design and designate indicia of tax payment to be affixed to each package of cigarettes as provided by this act. The director shall sell water applied stamps only to licensed wholesale dealers in the amounts of one thousand (1,000) or multiples thereof. Stamps applied by the heat process shall be sold only in amounts of thirty thousand (30,000) or multiples thereof. Meter imprints shall be sold only in amounts of ten thousand (10,000) or multiples thereof. Water applied stamps in amounts of ten thousand (10,000) or multiples thereof and stamps applied by the heat process and meter imprints shall be supplied to wholesale dealers at a discount of three and three-fourths percent (3¾%) from the face value thereof, and shall be deducted at the time of purchase or from the remittance therefor as hereinafter provided. Any wholesale cigarette dealer who shall file with the director a bond, of acceptable form, payable to the state of Kansas with

a corporate surety authorized to do business in Kansas, shall be permitted to purchase stamps, and remit therefor to the director within thirty (30) days after each such purchase, up to a maximum outstanding at any one time of eighty-five percent (85%) of the amount of the bond. Failure on the part of any wholesale dealer to remit as herein specified shall be cause for forfeiture of his bond. Remittances from the sale of such stamps or meter imprints shall be deposited with the state treasurer daily who shall issue a receipt therefor to the director and, except as hereinafter provided, shall be placed in the general fund of the state: *Provided,* That a revolving fund designated the cigarette tax refund fund not to exceed ten thousand dollars ($10,000) at any time shall be set apart and maintained by the director from revenue collected under this act and held by the state treasurer for prompt payment of all refunds authorized in this act and the act of which this act is amendatory. Said cigarette tax refund fund shall be in such amount as the director shall determine is necessary to meet current refunding requirements under this act and the act of which this act is amendatory.

"The wholesale cigarette dealer shall affix to each package of cigarettes stamps or tax meter imprints required by this act prior to said cigarettes being sold to any person, by him, his agent or agents, within the state of Kansas. The director is hereby empowered to authorize wholesale dealers to affix revenue tax meter imprints upon original packages of cigarettes and is charged with the duty of regulating the use of tax meters to secure payment of the proper taxes. No wholesale dealer shall affix revenue tax meter imprints to original packages of cigarettes without first having obtained permission from the director to employ this method of affixation. If the director approves the wholesale dealer's application for permission to affix revenue tax meter imprints to original packages of cigarettes he shall require such dealer to file a suitable bond payable to the state of Kansas executed by a corporate surety authorized to do business in Kansas. The director may, to assure the proper collection of taxes imposed by the act, revoke or suspend the privilege, theretofore granted, of imprinting tax meter imprints upon original packages of cigarettes. All meters shall be under the direct control of the director, and all transfer assignments or anything pertaining thereto must first be authorized by the director. All inks used in the stamping of cigarettes must be of a special type devised for use in connection with the machine employed and approved by the director. All repairs to the meter are strictly prohibited except by a duly authorized representative of the director. Requests for service shall be directed to the director. Meter machine ink imprints on all packages shall be clear and legible. If a wholesale dealer continuously issues illegible cigarette tax meter imprints, it shall be considered sufficient cause for revocation of his permit to use a cigarette tax meter.

"A licensed wholesale dealer may for the purpose of sale in another state transport cigarettes not bearing Kansas indicia of tax payment through the state of Kansas provided said cigarettes are contained in sealed and original cartons."

## K. S. A. 1970 Supp. 79-3312 covers the redemption of stamps and meter imprints and provides as follows:

"79-3312. Redemption of stamps and meter imprints. The director shall redeem any unused stamps or meter imprints that any wholesale dealer presents

for redemption within six (6) months after the purchase thereof, at the face value less three and three-fourths percent (3¾%): *Provided,* That such stamps or meter imprints have been purchased from the director. The director shall prepare a voucher showing the net amount of such refund due, and the state controller shall draw his warrant on the state treasurer for the same. Wholesale dealers shall be entitled to a refund of the tax paid on cigarettes which have become unfit for sale upon proof thereof less three and three-fourths percent (3¾%)."

K. S. A. 79-3321 makes it unlawful for *any person* to possess more than 200 cigarettes without the required tax indicia being affixed as provided under the act.

In its essence the contention of the Director of Revenue on this appeal is that the district court erred in refusing to allow him to collect the additional tax on cigarettes in Fleming's possession on July 1, 1970, for which the taxable event, sale to a retailer, had not occurred, even though Fleming had previously purchased and/or affixed tax indicia predicated upon the earlier tax rate. The rationale of the Director's position is simply this: The tax is an excise tax upon the *sale* of cigarettes within Kansas. Until that event occurs no tax is due. Cigarettes held by the wholesaler for sale have not yet been sold; hence the change in the amount of tax is applicable to those cigarettes. The Director further argues that Fleming is not the taxpayer but only the statutory collector for the Director of Revenue. The taxing statutes simply require Fleming, as a wholesaler, to pay in advance the excise tax upon cigarettes until such time as the cigarettes are actually transferred to a retailer. Until that time the excise tax may be increased and passed on to the retailer who pays the tax to the wholesaler. The Director is concerned about the fact that Fleming could collect 11¢ tax on each pack of cigarettes sold after July 1, 1970, on which it had paid a tax of only 8¢. The Director argues that this would constitute unjust enrichment and a windfall to Fleming at the rate of 3¢ per pack.

Fleming's position is that tax statutes are to be strictly construed in favor of the taxpayer; that the Director has no statutory authority to levy and collect an additional cigarette tax; that K. S. A. 1970 Supp. 79-3310 specifically provides that the cigarette tax shall be paid *only once* and shall be paid by the wholesale dealer first receiving the cigarettes. Fleming contends that under the statutory scheme the tax is really upon the inventory in Fleming's possession. Since the cigarette tax must be paid by the purchaser of stamps or meter imprints within 30 days after such purchase, the tax is not paid at any other time. There is nothing in the statute which re-

quires the cigarette wholesaler to collect the tax from the retailer or consumer or requires them to pay the tax. The only taxable event provided for in the statute is the purchase of the tax indicia by the wholesaler. Fleming further argues that in other recent taxing statutes increasing taxes on intoxicating liquors, motor fuels and special motor fuels, the legislature by specific provision has provided that the increase in tax should extend to existing inventory on which a lesser tax had already been paid. Such a provision was considered and intentionally rejected by the legislature in the statutes increasing the cigarette tax.

As pointed out above we are faced in this case with the problem of construing a tax statute. Under the Kansas cases we are required to construe a tax statute against the tax gatherer and in favor of the taxpayer. (*Grauer v. Director of Revenue*, 193 Kan. 605, 396 P. 2d 260.) In *Equitable Life Assurance Society v. Hobbs*, 154 Kan. 1, 114 P. 2d 871, the rule is stated as follows:

"Tax statutes will not be extended by implication beyond the clear import of language employed therein, and their operation will not be enlarged so as to include matters not specifically embraced. Where there is reasonable doubt as to the meaning of a taxing act, it will be construed most favorable to the taxpayer." (Syl ¶ 1.)

Another rule for construing statutes is that the legislative intent is to be determined by a general consideration of the whole act. Effect must be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*Harris v. Shanahan*, 192 Kan. 629, 390 P. 2d 772.)

We have considered the various sections of the Kansas Cigarette Tax Law and have concluded that the district court was entirely correct in holding that Fleming and its subsidiaries were not required to pay an additional tax on cigarettes on which a tax had been previously paid by Fleming to the Director of Revenue. We further find that the district court properly granted injunctive relief to Fleming enjoining the Director from levying and collecting any additional tax upon cigarettes which the plaintiffs, prior to July 1, 1970, had imprinted with tax indicia and paid the tax at the previous tax rate of 8¢ per pack. In arriving at this conclusion we have given great weight to certain provisions of the Kansas Cigarette Law. When Fleming acquired the cigarettes in question prior to July 1, 1970, and while the cigarette tax was 8¢ per package:

(1) The tax was to be paid to the Director by the wholesale dealer first receiving the cigarettes. (79-3310.)

(2) The tax was to be paid *only once.* (79-3310.)

(3) Meter imprints were to be acquired from the Director. (79-3311.)

(4) Following the purchase of meter imprints, the wholesale dealer was required to remit therefor to the Director within 30 days thereafter. (79-3311.)

(5) Payments made by the wholesale dealer to the Director were required to be deposited daily with the state treasurer and placed immediately in the state general fund. (79-3311.)

(6) Meter imprints were to be affixed to the cigarettes by the wholesaler. (79-3311.)

(7) The Director had direct control of the tax meters in order to secure payment of the proper tax imposed. (79-3311.)

(8) Any person who did not affix the imprints on the cigarette packages and had more than 200 cigarettes in his possession without the required tax indicia, was in violation of 79-3322 and guilty of a misdemeanor.

(9) Only wholesale dealers were entitled to claim a refund of the tax paid on cigarettes. There was no provision for a tax refund to retailers or consumers where cigarettes become unfit for sale. (79-3312.)

(10) There was no provision in the act which required the wholesaler to charge the cigarette tax to the retailer; nor is there any provision that the cigarette tax must be added to the cost of cigarettes and recovered by the wholesaler from the retailer or consumer as user.

(11) The statute did not require the wholesaler to keep records or make an accounting of taxes following his payment of the cigarette tax to the Director.

(12) Under the statute the only time specified for the tax to be paid was within the period of 30 days after stamps or imprints are purchased by the wholesaler.

When all of these provisions of the Kansas Cigarette Tax Law are considered together and in the absence of any specific provision in the statute for the payment of an additional tax after the tax has once been paid by the wholesale dealer, we believe that the trial court was correct in its finding that Fleming was not obligated to pay an additional tax at the new rate on cigarettes on which the tax had already been paid.

In arriving at this conclusion we have also considered other Kansas tax statutes where increases in taxes have been provided for. In some of these taxing statutes where the legislature so intended, it specifically provided that the increase in tax should apply to existing inventories and specifically spelled out the procedure for the Director to levy and collect the additional tax. In this regard we have noted in particular K. S. A. 41-501b which specifically provided that the increase in tax should apply to all alcoholic liquor in possession of any person for purposes of sale. Similar provisions may be found in K. S. A. 79-3408c pertaining to an increased tax on

motor vehicle fuels and in 79-3475a providing for an increased tax on special fuels and also in K. S. A. 1969 Supp. 79-3352 providing for a tax on inventories of tobacco products on hand when the tax went into effect. Had the legislature intended to levy an additional tax upon cigarettes in Fleming's inventory on which the tax had previously been paid, it could have easily done so by specifically so providing as it did provide in the other statutes discussed above.

The Director cites *Patton v. Brady, Executrix*, 184 U. S. 608, 46 L. Ed. 713, 22 S. Ct. 493. *Patton* held in substance that Congress had the power constitutionally to impose an additional tax on property in inventory still held for sale before it passed to the hands of the ultimate consumer. We have no quarrel with the holding in that case but find it not applicable here since the tax statute in *Patton* specifically provided for the payment of an additional tax. In the case at bar the legislature did not so provide. Fleming does not contend that the Kansas legislature could not have taxed the cigarettes in question but only contends that legislature did not do so. In our judgment *Patton* is distinguishable on that basis.

The Director cites two Texas cases as authority for his position— *McCarty v. James*, 453 S. W. 2d 220 and *Daywood v. Calvert*, 478 S. W. 2d 152. Both of those cases involved the Texas Cigarette Tax Act which specifically made it mandatory that the cigarette tax levied be added to the price of the cigarettes and be paid by the ultimate buyer or consumer. The case at bar is distinguishable from the Texas cases in that the Kansas statute does not make it mandatory for the ultimate impact of the tax to fall on the ultimate consumer and is completely silent on the collection of any tax after the wholesaler has paid the tax.

We do not find persuasive the argument of the Director that Fleming may gain a windfall by reason of the decision of the trial court. Fleming paid all taxes which were legally due and owing at the time the cigarettes were purchased, in accordance with the statutory scheme created by the legislature. Since the legislature did not provide for the payment of an additional tax, Fleming was not obligated to pay it. Fleming sold cigarettes to retailers after July 1, 1970, in competition with other wholesale dealers. There is nothing in the record to show any improper actions or over-reaching on the part of Fleming nor is there any showing that Fleming acted in any manner except in complete conformity with the law.

For the reasons set forth above we find no error in the judgment of the district court. The judgment is affirmed.

FONTRON, J., dissenting.