No. 48,394

Paula D. Easom, *Appellant,* v. Farmers Insurance Company, Inc., *Appellee.*

(560 P. 2d 117)

Opinion filed January 22, 1977.

*Eugene C. Riling,* of Riling, Burkhead & Rhudy, Chartered, of Lawrence, argued the cause and was on the brief for the appellant.

*J. H. Eschmann,* of Ascough, Bausch & Eschmann, of Topeka, argued the cause and was on the brief for the appellee.

*L. M. Cornish,* of Glenn, Cornish & Leuenberger, and *Mark L. Bennett, Sr.,* of Davis & Bennett, both of Topeka, were on the brief for The Kansas Association of Property and Casualty Insurance Companies, Inc.; American Mutual Insurance Alliance; National Association of Independent Insurers; National Association of Mutual Insurance Companies; and American Insurance Association, as *amici curiae.*

*James Yates,* of Kansas City, and *Carol Duffy McDowell,* of Topeka, were on the brief for The Kansas Trial Lawyers Association, as *amici curiae.*

*Robert L. Howard* & *William Sampson,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, were on the brief for Kansas Association of Defense Counsel, as *amici curiae.* *Aubrey G. Linville,* of Clark, Mize & Linville, of Salina; *Roger D. Stanton,* of Weeks, Thomas, Lysaught, Bingham & Mustain, Chtd., of Kansas City; and *H. E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, of counsel.

*Michael S. Mullen,* Special Assistant Attorney General, and *Jody R. Olberding,* both of Topeka, were on the brief for Fletcher Bell, Commissioner of Insurance of the State of Kansas, as *amici curiae.*

The opinion of the court was delivered by

KAUL, J.: This appeal is from a judgment of the trial court con-

struing certain provisions of the Kansas automobile injury repara-
tions act, commonly referred to as the no-fault insurance law.
( K. S. A. 1975 Supp. 40-3101, *et seq.* )   In this opinion the law will
be referred to as the K. A. I. R. A. or the no-fault act.   The primary
question presented is whether defendant-appellee, Farmers Insur-
ance Company, Inc., insurer of plaintiff-appellant, is entitled to
reimbursement, pursuant to K. S. A. 1975 Supp. 40-3113 ( *a* ), in the
full amount of personal injury protection (PIP) benefits previously
paid to plaintiff without a deduction for attorney fees and costs of
litigation.

Pertinent facts are not in dispute and may be summarized.   Plain-
tiff Easom sustained personal injuries in a collision between her
automobile and one driven by Gary A. Hill.   Defendant promptly
paid plaintiff $4,731.31 in PIP benefits.   Subsequently, plaintiff
filed an action against Hill and his employer Harris claiming $20,-
000.00 in damages for injuries sustained.   Plaintiff retained her
attorneys on a contingent fee contract of one-third of the amount
recovered from Hill and Harris or their insurer.   Hill and Harris
denied liability and also challenged the extent of plaintiff's injuries.
In discovery proceedings, depositions of plaintiff and Hill were
taken.   While the case was pending, and before trial, plaintiff
settled with Hill and Harris for $9,500.00 and judgment was en-
tered by the trial court in that amount on November 3, 1975.   On
the next day, Farmers filed its petition to intervene in said action,
claiming a lien and requesting full reimbursement of all PIP bene-
fits paid to plaintiff.   Prior to filing its petition to intervene, Farm-
ers had taken no part in the action although it had been notified
of the filing of the suit by plaintiff's attorneys and that they were
claiming an attorneys' lien for one-third of all moneys collected
by plaintiff.   There was no agreement for representation between
Farmers and plaintiff's attorneys nor was there any contract be-
tween plaintiff or her attorneys with Farmers relative to plaintiff's
interest in the recovery.

The record discloses that an "Inter-Company Reimbursement
Notification" was served by Farmers on Patrons Insurance Com-
pany, the insurer of defendant Harris.   The notification informed
Patrons that investigation of the accident by Farmers indicated
that liability rested with Patrons's insurer and that Farmers was
requesting reimbursement under K. A. I. R. A. for PIP benefits paid.
Notification by Farmers was acknowledged by attorneys for Patrons,

who informed Farmers that its claim for reimbursement would be honored in connection with any final disposition of the claim.

Plaintiff and her attorneys resisted Farmers's claim for reimbursement in full of PIP benefits paid to plaintiff. Plaintiff contended that the judgment entered on November 3 was res judicata as to Farmers's petition to intervene and that Farmers was collaterally estopped from asserting its claim for reimbursement after judgment had been entered.

The trial court permitted Farmers to intervene and, after receiving briefs and hearing arguments, ruled that Farmers was entitled to reimbursement for the full amount of PIP benefits paid to plaintiff; namely, the sum of $4,731.31. This appeal followed.

While plaintiff reasserts res judicata and collateral estoppel her principal argument on appeal goes to the question whether an insurer is to be charged with a reasonable attorney fee and a share of the costs of litigation under K. S. A. 1975 Supp. 40-3113 (a) where an insured has secured a judgment against or a settlement with a negligent third party sufficient to recoup the entire amount of PIP benefits.

Oral arguments were first heard by this court on September 23, 1976. After considering the arguments, briefs of the parties and briefs of *amici curiae,* the court determined that resolution of the issue presented required an interpretation of 40-3113 (a) in its entirety and that further briefing and arguments would benefit the court in disposing of the appeal. We also were informed that two other appeals, *Jaremko v. Jones,* 221 Kan. 444, 560 P. 2d 136; and *Davis v. Western Insurance Companies,* 221 Kan. 441, 560 P. 2d 133, both decided this day, involved the same principal issue, although differing somewhat as to facts and with reference to the positions taken by the respective parties. We directed reargument in the instant appeal and scheduled arguments in the other two appeals for the December 1976 docket. As a part of our order we requested briefs and arguments on two related points in connection with an interpretation of the statute which were not fully treated by the parties in their original briefs. Arguments in all three appeals were heard on December 10, 1976, and we have received comprehensive and helpful briefs from all parties and *amici curiae.*

We have examined the K. A. I. R. A. in two previous appeals (*Manzanares v. Bell,* 214 Kan. 589, 522 P. 2d 1291; and *Farm & City Ins. Co. v. American Standard Ins. Co.,* 220 Kan. 325, 552 P. 2d

1363.) In *Manzanares* we were confronted with constitutional challenges to the original act (Substitute for House Bill No. 1129, Laws 1973, Chapter 198) and the present act which is a revised version of the 1973 act. The present act (Senate Bill No. 918, Laws 1974, Chapter 193) became effective February 22, 1974. The unique posture of the *Manzanares* appeal, as explained by Fatzer, C. J., speaking for the court, stemmed from the fact that on January 4, 1974, the district court found Substitute for House Bill No. 1129 unconstitutional and filed its memorandum opinion January 24, 1974, but stayed its judgment. The appeal in *Manzanares* was immediately perfected. In the meantime, Senate Bill No. 918, which became the present act, was introduced in the legislature. It was aimed at correcting constitutional infirmities found by the district court in the initial act. Senate Bill No. 918 was passed by both houses of the legislature by substantial majorities. It was signed by the Governor on February 18, 1974, and became effective upon publication in the official state paper on February 22, 1974. Thus Senate Bill No. 918, which repealed the original act, became the effective no-fault law of the state on that date, although the original act had been the applicable no-fault law from January 1 through February 22, 1974, a period of fifty-three days.

In view of the circumstances, and for the reasons set forth in the opinion, this court directed the parties to file supplemental briefs concerning the constitutionality of the present act. In *Manzanares* injunctive relief against a state official was sought, which necessitated the judgment of the court to operate *in futuro,* thus the court was required to consider the effect of the statute enacted during the pendency of the appeal. We found the district court had erred and that both acts were constitutional. The present act was examined in its entirety in *Manzanares* and its purposes and operations were considered and discussed in considerable detail with respect to the constitutional challenges lodged against most of the sections of the act. We stated that our discussions of the constitutional issues raised were not to be considered as rulings on the operative effect of the various parts of the act. However, in our discussion of the constitutional challenge to 40-3113, in *Manzanares* we made certain observations which are pertinent to the issue herein and will be mentioned in the course of this opinion.

In *Farm & City* we examined the structure and operative effect of 40-3113 (*a*), but the issue there concerned the reimbursement of PIP benefits paid by an insured's carrier out of survivors' benefits

paid by the tort-feasor's insurance carrier to the survivors of the deceased insured.

In *Manzanares* and *Farm & City* we recognized that the PIP insurance required by the act was "first party coverage," with direct benefit payments coming from a party's insurance carrier.

As previously indicated, the issues presented are to be resolved by interpretation of the provisions of K. S. A. 1975 Supp. 40-3113 (a) which reads:

"**Insurer's or self-insurer's rights of reimbursement and indemnity.** An insurer's or self-insurer's rights of reimbursement and indemnity shall be as follows:

"(a) [1] No subtraction from personal injury protection benefits shall be made because of the value of a claim in tort based on the same bodily injury, [A] but after recovery of damages by judgment, settlement or otherwise is realized upon any such tort claim, [B] a subtraction shall be made to the extent of the recovery, less reasonable attorney's fees and other reasonable expenses incurred in effecting the recovery, [C] but only to the extent that the injured person has recovered damages from the tortfeasor or his insurer or insurers, [D] which are duplicative of personal injury protection benefits payable. [2] If personal injury protection benefits have already been received, [A] the claimant shall repay to the insurer or insurers out of any such recovery a sum equal to the benefits received, [B] but no more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, [C] but only to the extent that the injured person has recovered said damages from the tortfeasor or his insurer or insurers [D] which are duplicative of personal injury protection benefits received. [3] The injured person's insurer or insurers shall have a lien on such recovery to this extent. [4] No recovery of damages by an injured person or his estate shall be subtracted by an insurer in calculating benefits due after such person's death resulting from an injury for which the benefits were payable, and no recovery under K. S. A. 1973 Supp. 60-1903 shall be subtracted in calculating funeral benefits."

The remaining subsections of the act are not directly involved in the specific issue presented, but should be mentioned to bring into focus the overall purpose of 40-3113 in establishing an insurer's rights of reimbursement and indemnity.

Subsection (b) of 40-3113 entitles a PIP insurer indemnity from one who, with notice of such insurer's interest, makes payment to the injured insured without making the insurer a joint payee or without obtaining the insurer's consent to a different method of payment.

Subsection (c) affords the insurer the right to bring suit against a third party tort-feasor for the recovery of PIP benefits paid under the terms and conditions provided therein.

Subsection (d), as an alternative to bringing an action under (c),

provides for arbitration of reimbursement between the insured party's insurer and the insurer of the tort-feasor, if insured.

Subsection (e) proscribes double recovery of PIP benefits in the case of payment under uninsured motorist coverage by providing for deduction of benefits from any recovery received by an injured person by reason of such coverage.

For purposes of clarity and for convenience in referring thereto in the course of this opinion, we have numbered the sentences in subsection (a) and inserted letters in alphabetical order to identify the dependent and independent clauses of sentences one and two.

Turning now to the issues presented, we shall first consider the two questions upon which we requested further briefing and argument in our order for rehearing. Both questions stem from the last clause [D] of the first and second sentences of 40-3113 (a), which appears in almost identical language in both instances and is appended as a dependent clause to clause [C] of both sentences. In the first sentence clause [D] reads:

". . . [W]hich are duplicative of personal injury protection benefits payable. . . ."

Clause [D] in the second sentence is identical except the word "received" appears in lieu of the word "payable." It is also to be noted that clause [C] in both sentences appears in identical language except the word "said" precedes "damages" in the second sentence and is omitted in the first.

The two questions submitted for further briefing are as follows:

"I. Under the record presented, what portion of the ninety five hundred dollar ($9,500.00) settlement is duplicative of personal injury protection benefits received?

"II. In construing K. S. A. 1975 Supp. 40-3113 (a) concerning liability for attorneys' fees, what effect should be given the last clause of the second sentence which reads:

" '. . . [B]ut only to the extent that the injured person has recovered said damages from the tortfeasor or his insurer or insurers which are duplicative of personal injury protection benefits received. . . .'?"

Before considering the questions in the light of the language of the statute, we should note some of the general rules of statutory construction long adhered to by this court. First, the fundamental rule, to which all others are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statute even though words, phrases or clauses at

some place in the statute might be omitted or inserted. This rule, stated in various forms, has been applied by this court throughout its history. (*Farm & City Ins. Co. v. American Standard Ins. Co.*, supra; *Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P. 2d 219; and *Hunziker v. School District*, 153 Kan. 102, 109 P. 2d 115.) Legislative intent is to be determined by a general consideration of the entire act. Effect should be given, if possible, to the entire statute and every part thereof. To this end it is the duty of the court, so far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. (*Fleming Company v. McDonald*, 212 Kan. 11, 509 P. 2d 1162.) The several provisions of a statute *in pari materia* must be construed together with a view of reconciling and bringing them into workable harmony if it is reasonably possible to do so. (*Callaway v. City of Overland Park*, 211 Kan. 646, 508 P. 2d 902.)

Since PIP benefits have been paid in the case at bar, reimbursement by repayment under sentence 2 is the provision of the statute directly involved; however, under the rule of *in pari materia* the several provisions of the statute must be construed together.

Concerning the first question, plaintiff takes the position that the "duplicative" clause in question is a further limitation on an insurer's right to reimbursement of PIP in addition to the burden of a share of plaintiff's attorney's fees which, plaintiff claims, is also imposed by the statute. Plaintiff asserts that the effect of the clause is to require proof that a portion of the dollar amount of judgment was duplicative of PIP benefits and that the burden of proof thereof was on the insurer Farmers. Plaintiff projects this theory by asserting that Farmers wholly failed to sustain its burden of proof on the allocation of the dollar amount of judgment between damages which are duplicative of PIP benefits received and those which are not. Plaintiff goes on to argue that since the judgment in this respect is now final, Farmers is barred from reimbursement of any PIP benefits paid by reason of the doctrines of collateral estoppel and/or res judicata. In the alternative, in connection with this point, plaintiff also proposes the theory that since plaintiff's claim was for $20,000.00, but recovery was only $9,500.00, PIP reimbursement should be apportioned in the ratio of amount recovered to amount claimed.

We are unable to give the effect to the clause in question sought by plaintiff on any of the theories advanced. Sentence 2, of subsection (*a*), which is applicable in the instant case, requires re-

payment by the insured to the insurer out of *any* recovery a *sum equal* to the benefits received. The clause in question was added to both the first and second sentences as they originally appeared in Substitute for House Bill No. 1129 in order to further clarify subsection (*a*) of the act in response to the trial court's determination in *Manzanares* that it was unconstitutional. The second sentence of the statute, as it appeared in Substitute for House Bill No. 1129, reads:

". . . If personal injury protection benefits have already been received, the claimant shall repay to the insurer or insurers out of any such recovery a sum equal to the damages received, but no more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery, but only to the extent that the injured person has recovered said *damages* from the tortfeasor or his insurer or insurers. . . ." (Emphasis supplied.)

The trial court in *Manzanares* found that the use of the word "damages" required repayment of all damages recovered and, thus, constituted a denial of due process and equal protection. Concerning this point, with respect to the second sentence, we said in the *Manzanares* opinion:

". . . The denial of due process and equal protection resulted from the use of the word 'damages' in the second sentence of the statute.

"When a statute is susceptible of more than one construction, it must be construed to give expression to its intent and purpose, even though such construction is not within the strict literal interpretation of the statute. (*Gnadt v. Durr*, 208 Kan. 783, 494 P. 2d 1219.) While the scrivener could well have used the term 'benefits' instead of 'damages,' we think the legislative intent is clear. The key word in the second sentence is 'repay.' To repay requires that the insured receive duplicative payments. The section, in its entirety, was designated to prevent duplicative recovery. The section is not so vague as to render it unconstitutional." (p. 617.)

The legislature, of course, did not have at hand this court's interpretation of the section in *Manzanares* at the time the "duplicative" clause was added. We are convinced the clause was added, in response to the *Manzanares* trial court's decision, only to further clarify the purpose of the section which this court said was designed in its entirety to prevent duplicative recovery. According to the definition in K. S. A. 1975 Supp. 40-3103 (*q*), PIP benefits cover economic loss of the insured, including disability and medical benefits. This is in accord with the basic protection plan proposed by Keeton and O'Connell (see discussion by Keeton and O'Connell, Basic Protection for the Traffic Victim, Chapter 6, pages 273, *et seq.*) We recognized in *Farm & City* that the purpose of the

K. A. I. R. A. was to make PIP coverage mandatory by requiring every owner of a motor vehicle to obtain first party coverage for PIP benefits payable by his own insurer; and further that the reimbursement section of K. A. I. R. A. was designed to prevent a double recovery by claimant where the net recovery by insured was sufficient. We referred to the Keeton and O'Connell proposal on the subject in these words:

"Keeton & O'Connell proposed no-fault automobile liability insurance legislation and suggested provisions to prevent double recovery for elements of damage by granting an insurer, who has paid *an injured party* for personal injuries, a right to reimbursement *if the injured party recovered* for the injuries from the tort-feasor or his insurer (see Keeton & O'Connell, supra, § 1.10 [c] [2], p. 307) . . ." (p. 338.)

In the instant case the trial court found in finding No. 1:

". . . Farmers Insurance Group, Intervenor herein, paid medical bills of $555.31 and loss of wages in the sum of $4,176 or a total of $4,731.31 as required by its policy issued in compliance with the Kansas Automobile Reparations Act. . . ."

PIP benefits were found to be $4,731.31, concerning which there is no dispute, and the reimbursement provisions of 40-3113 (*a*) require repayment of a *sum equal* thereto. The duplicative clause in question, as it appears in the statute, not only requires that reimbursement be for damages that are duplicative of PIP benefits, but it also operates as a rule of measurement to be applied in limiting reimbursement to a *sum equal* to PIP benefits. It serves to limit repayment under the second sentence of 40-3113 (*a*), as well as subtraction under the first sentence to a *sum equal* to PIP benefits paid or payable whichever the case might be. Reimbursement of the insurer is limited to a *sum equal* to, and duplicative of, PIP benefits and cannot be in excess thereof which was the concern of the trial court in *Manzanares*. If, for instance, the recovery for economic loss against the third party tort-feasor is in excess of PIP benefits paid, insurer is entitled to repayment of only the amount of economic loss previously paid.

As we observed in *Farm & City*, provisions for reimbursement in our own act and those of other states stem from the Keeton and O'Connell study (Keeton and O'Connell, Basic Protection For The Traffic Victim) which is generally regarded as the foundation of most no-fault legislation. The Florida and Michigan no-fault laws contain reimbursement provisions similar to our 40-3113 (*a*). (See 18A Fla. Stat. Ann., § 627.736[3], and 17A Mich. Stat. Ann., 1976 Supp. § 24.13116.) Florida added to its provision for reimburse-

ment, set forth in paragraph (3) (a) of its act, an additional paragraph (b) which provided that reimbursement should be based upon such equitable distribution of the recovery as the court may determine, less a pro rata share of the costs and attorney fees expended by plaintiff in effecting the recovery. The addition of such a provision to our act would accomplish the effect sought by plaintiff.

In an exhaustive analysis of the reimbursement provisions of the Florida no-fault law, entitled "Insurer's Rights of Reimbursement Under Florida's No-Fault Law," appearing in Vol. 26, University of Florida Law Review (1974), the authors had this to say concerning the two paragraphs of the act:

"By allowing full reimbursement to the insurer from the insured's tort recovery, Florida Statutes, section 627.736 (3) (a), serves the basic purposes of subrogation. . . .

. . . . . . . . . . . . . .

"Unlike paragraph (3) (a), Florida Statutes, section 627.736 (3) (b), injects the vague concept of equitable distribution into the no-fault law. Under this principle the insurer never receives full reimbursement and the insured always receives some double recovery. Moreover, the purpose of equitable distribution is to insure the fullest recovery possible to the injured party by decreasing the amount of the insurer's reimbursement. Furthermore, the insurer may be assessed a prorata share of the costs expended by the injured party in obtaining the recovery as well as a reasonable attorney's fee for the insured's attorney. Although paragraph (3) (b) maximizes the recovery of the injured party, it defeats the goals of no-fault and the purposes of subrogation." (pp. 550-551.)

The difficulties encountered in the application of the Florida act are demonstrated by three decisions of the Courts of Appeal of Florida. In *State Farm Automobile Ins. Co. v. Hauser,* Fla. App., 281 So. 2d 563 (Third District, 1973), the court found that paragraphs (a) and (b) resisted reconciliation. The court affirmed a trial court's judgment allowing equitable distribution, but reversed as to the reimbursement allowed on the ground it was inequitably insufficient. The case was remanded for trial court reconsideration on this point. According to the Florida decisions referred to the basis for the application of (b) permitting equitable distribution, rather than (a) authorizing full reimbursement, appears to depend upon whether suit has been filed. The *Hauser* case was followed by *Reyes v. Banks,* Fla. App., 292 So. 2d 39 (Fourth District, 1974) and *State Farm Mutual Automobile Ins. Co. v. Mance,* Fla. App., 292 So. 2d 52 (Third District, 1974). These decisions clearly indicate that where suit has been filed paragraph (b) becomes

applicable and equitable distribution is allowed, but where recovery is by settlement without suit paragraph (a) is applicable and the PIP insurer is entitled to one hundred percent reimbursement. This result, stemming from the irreconcilable inconsistencies of paragraphs (a) and (b), aggravates rather than lessens the volume of litigation, as pointed out in the special concurring opinion of Chief Judge Barkdull in *State Farm Mutual Automobile Ins. Co. v. Mance,* supra. Judge Barkdull suggested that the legislature should revisit the subject. In its 1976 session the Florida legislature responded by enacting substantial amendments to § 627.736 with respect to reimbursement. (See 18A Fla. Stat. Ann., 1977 Cumulative Annual Pocket Part.)

In view of the addition of paragraph (b) to the Florida act, the Florida decisions are of little aid in the construction of our own law. Counsel for Farmers has called to our attention that House Bill No. 2869, which did provide for apportionment of reimbursement with respect to attorney fees, was introduced in the 1976 session of the Kansas Legislature, but was killed in the House Committee on Insurance. Counsel argues that such action indicates legislative intent negative to apportionment of attorney fees with respect to reimbursement. The bill never reached the floor of either house and we are not persuaded by counsel's arguments in this regard.

Plaintiff argues the statute contemplates a showing that damages recovered by the insured are, in fact, duplicative of PIP benefits and that the burden of proof in this regard is upon the insurer. As to the case at bar, plaintiff contends Farmers has failed to furnish proof and, thus, is barred by the doctrines of collateral estoppel and/or res judicata.

To impose a "burden of proof" rule upon the statute in accordance with plaintiff's theory would, in effect, strike out the insurer's lien for the amount of benefits paid, as provided for in sentence 3 of the statute, and in lieu thereof establish an "equitable apportionment" rule which is not in the act. The result would be a multitude of lawsuits, not between the insured and the tort-feasor, but between the insured and his PIP insurer.

Our specific holding in *Farm & City* was that the reimbursement provisions of 40-3113 do not apply to survivor's benefits under the act, but we made this pertinent observation concerning apportionment:

". . . How could this or any court determine what portion, if any, of

the $14,800.00 was for PIP benefits and what portion was for non-pecuniary loss? . . ." (p. 340.)

In the case at bar, even though suit was filed it was terminated by settlement which resulted in a judgment by confession. Recovery was actually secured through settlement with the tortfeasor's insurer. The judgment entered on the settlement did not specify what portion of the settlement represented plaintiff's economic loss for which she had received PIP benefits. No differentiation is shown as to pecuniary and nonpecuniary loss except that PIP benefits were determined to be $4,731.31 concerning which there is no dispute. Every settlement of a tort claim necessarily entails some discounting of a plaintiff's original claim, but our statute makes no differentiation between recovery by settlement or judgment. The pertinent portion reads ". . . [B]ut after recovery of damages by *judgment, settlement* or otherwise. . . ." (Emphasis supplied.)

The statutory scheme of K. A. I. R. A. clearly gives control of recovery by either litigation or settlement to the insured. Control is exclusive for the first eighteen months following the accident and then insurer is entitled to bring an action only after thirty days notice to the insured (see subsection [c]). The insured is in control of the litigation and possesses knowledge of the nature of the losses incurred. If the total recovery is claimed not to include pecuniary losses or the full amount thereof, it is the burden of the insured to furnish proof thereof.

In numerous personal injury cases where the verdict was claimed to be inadequate, this court has considered the case on the premise that the full pecuniary losses, medical expenses, etc., were included in the verdict when established by substantial evidence. We have directed the granting of a new trial where the verdict was only equal to the amount of medical expenses proven, and awarded nothing for pain and suffering, even though there was uncontradicted evidence thereof. (See *Timmerman v. Schroeder,* 203 Kan. 397, 454 P. 2d 522, and cases cited therein.) We believe it must be presumed that pecuniary loss, represented by PIP benefits, is included in a recovery either by settlement or judgment in the absence of proof to the contrary and that the burden of supplying such proof is upon the insured.

We hold that the duplicative clause referred to does not serve as a basis for injecting an apportionment or equitable distribution theory into the act; and further that it has no bearing on the ques-

tion of attorney's fees as related to reimbursement. It follows that plaintiff's contentions concerning collateral estoppel and/or res judicata are of no avail. As applied to the instant case, the $9,500.00 is duplicative of the PIP benefits paid in the amount of $4,731.31.

We turn now to the question of attorney's fees which was the principal issue determined by the trial court and is the paramount question presented in this appeal. We are confronted with a plethora of arguments by counsel and *amici curiae* on both sides of the issue. We have been presented with numerous documents that were not before the trial court, such as letters from members of the legislature addressed to counsel stating their individual views on the subject, as well as a letter written by an attorney for the Commissioner of Insurance addressed to an attorney who is not involved in this litigation. In the last letter mentioned the Commissioner's attorney gave an interpretation of 40-3113 (a) with respect to attorney fees that appears to be inconsistent with the position now taken by the Commissioner in his brief *amicus curiae.*

We have carefully examined the briefs of all counsel and *amici curiae,* which have been of great assistance in our examination of 40-3113 (a), but to document all of the arguments presented would unreasonably extend this opinion.

The prefatory sentence of K. S. A. 1975 Supp. 40-3113 declares that an insurer's or self-insurer's rights of reimbursement shall be as set forth in the five following subsections (a) through (e).

The controversy in the case at bar arises from the provisions of subsection (a) which is composed of four sentences. The first proscribes any subtraction from PIP benefits because of the value of a tort claim based on the subject injury and then proceeds to provide for the insurer's reimbursement by way of subtraction by the insurer from PIP benefits if a recovery of damages is accomplished by the insurer prior to the payment of PIP benefits. The second sentence of (a) provides for repayment of PIP benefits where a recovery of damages is secured by the insured by way of settlement or judgment after PIP benefits have been paid. Since PIP benefits had been repaid in the case at bar, the trial court determined the question under the second sentence of (a). The trial court concluded:

"Under the clear meaning of the statute (40-3113 [a]) applicable to the facts of this case, Intervenor is entitled to reimbursement for the full amount of personal injury protection benefits paid to plaintiff, namely the sum of $4,731.31. The phrase 'exclusive of attorney fees and expenses' as used in the statute protects a tort claimant from being forced to make up the difference

out of his own funds in cases where the recovery, over and above attorney fees and costs, is less than the P. I. P. benefits for which reimbursement is sought. Whether such result is fair to the insured tort claimant is for the legislature to decide and it has spoken."

The majority of this court has concluded that the trial court correctly construed the statute as applied to this case.

Although the trial court was concerned only with reimbursement by way of repayment under sentence (2), we believe under rules of statutory construction we should examine subsection (a) in its entirety in context with other subsections of 40-3113 and in the light of the overall purposes and intendment of the K. A. I. R. A.

One of the main purposes of the K. A. I. R. A. is to provide prompt payment of PIP benefits to an injured insured without regard to fault. Under K. S. A. 1975 Supp. 40-3110 (b) PIP benefits are overdue if not paid within thirty days after notice and bear simple interest at the rate of eighteen percent per annum. K. S. A. 1975 Supp. 40-3111 (b) provides for the taxing of an attorney fee against the insurer for advising and representing an insured in the collection of overdue PIP benefits. Subsection (b) further specifically directs that such attorney fee shall be in addition to any benefits collected. It is apparent that running through K. A. I. R. A. is the premise that PIP benefits are primary, have priority, and are to remain intact in the hands of the insured. It is also the clear design of the act that the wrongdoer, if established as such by settlement or judgment, should bear the burden of the damages incurred and that the PIP insurer is to be reimbursed if sufficient recovery is had against the wrongdoer.

We shall examine sentence (1) in detail because we believe the operative effect thereof is intended to reach the same result as effected by sentence (2). The difference in the language employed is necessitated because sentence (1) deals with reimbursement by subtraction, whereas sentence (2) provides for reimbursement by repayment.

The first clause of sentence (1) of subsection (a) is written in the negative. It provides "no subtraction" shall be made because of the value of an insured's tort claim. The second clause, which we have labeled [A], fixes a condition "after recovery of damages is realized" which leads to clause [B], which refers back to the initial "no subtraction" provision and states an exception thereto that "a subtraction shall be made to the *extent* of the recovery less reasonable attorney's fees and other reasonable expenses incurred

in effecting the recovery." Clauses [C] and [D] deal with the "duplicative of" limitation which we have previously considered. It is the language of clause [B] that gives rise to the controversy. In reading this clause it must be kept in mind that sentence (1) is dealing with a situation where recovery has been secured, but PIP has not been paid. The purpose of sentence (1) is to direct what subtraction shall be made from PIP benefits by the insurer when called upon to pay after the insured has obtained recovery. It simply directs a subtraction *to the extent* of the recovery less attorney's fees and expenses. To arrive at the extent of the recovery under this direction, attorney's fees and expenses are subtracted from recovery and the remainder is the extent thereof. The clear import is that subtraction by the insurer is limited to the extent of recovery as thus determined. If the extent of recovery, as calculated, is more than PIP benefits payable, the total PIP is subtracted. If the extent of recovery is less than PIP benefits payable, only that amount may be subtracted and the balance is paid to the PIP insured. If, for example, PIP benefits had not been paid in the instant case, Farmers would be entitled to subtract the entire amount because the extent of recovery ($9,500.00), less attorney's fees and costs, is more than the PIP benefits payable. If, on the other hand, plaintiff had secured a settlement of only $6,000.00, rather than $9,500.00, the extent of recovery would have been $6,000.00, less $2,000.00 attorney's fees and costs of $217.45 or $3,782.55, which would be subtracted from PIP benefits of $4,731.31 and the balance of $948.76 would be payable to plaintiff by Farmers. The attorney would have his one-third fee of $2,000.00, the plaintiff would have an amount equal to her full PIP benefits and Farmers would be short $948.76 on PIP reimbursement. If the case had been tried and a defendant's verdict returned, then, of course, Farmers would be entitled to no subtraction from PIP benefits payable and would be required to pay the full amount on demand.

In reading sentence (1), we give the usual dictionary meaning to the words employed. The word *"less,"* when used as a preposition as in clause [B], is given meaning in Webster's Third New International Dictionary [Unabridged] as "1: diminish by: with the subtraction of: MINUS . . . 2: with the exception of: EXCLUDING. . . ." Any of such words or phrases could have been used in clause [B] in place of *less* without changing the import thereof.

As counsel suggests, the provisions of sentence (1) will rarely be applicable. They will be applied, probably only when an injured

insured has, for some reason, failed to apply for PIP benefits, where a settlement is made within a few days or weeks, or where PIP benefit payments extend over a length of time. Failure to pay PIP benefits promptly results in liability of the insurer for attorney's fees and interest at eighteen percent per annum, as previously mentioned.

We turn now to sentence (2) of 40-3113 (a) which deals with the situation where PIP benefits have been paid prior to recovery of damages, as in the case at bar. The first clause of sentence (2) fixes the condition—if PIP benefits have already been received. The second clause labeled [A] directs the claimant to repay to his insurer, out of his recovery, a *sum equal* to PIP benefits received. Clause [B] effects the same limitation on repayment of PIP as does clause [B] in sentence (1) with respect to subtraction except that different language is employed in the case of repayment. Clause [B] of sentence (2) limits repayment *to no more* than the recovery *exclusive of* reasonable attorney's fees and expenses. The clear meaning is that the amount of recovery subjected to repayment can be no more than the amount recovered exclusive of attorney's fees and expenses. As in the case of clause [B] in sentence (1), and as noted by the trial court, the clause protects the tort claimant from being forced to make up the difference out of his own PIP benefits in cases where the recovery, over and above attorney's fees and costs, is less than the PIP benefits for which repayment is sought. The same language gives priority to attorney's fees and costs over repayment to the insurer where recovery is insufficient. The clauses referred to operate to the effect that the right to reimbursement shall in no event exceed the amount actually recovered after the deduction of reasonable attorney's fees and expenses. The reference to attorney's fees in both sentences is for the purpose of obtaining this effect and not as a direction that fees be charged against reimbursement in every case as argued by the plaintiff. Opposing counsel points out that the legislature had considered attorney's fees as evidenced by the provision therefor in 40-3111 (b) and could have easily added a proviso thereto with respect to reimbursement if it had so intended. Counsel also notes the legislature is well aware of the statutory method of providing for proportional payment of attorneys' fees as set forth in K. S. A. 1975 Supp. 44-504 (c) of the Workmen's Compensation Act.

It may be seen that sentences (1) and (2) leave a claimant in the same position. In either situation, where recovery is insufficient,

the net effect is that the insurer, by being charged with the full amount of PIP benefits, is actually paying a portion of the insured's attorney fees. This result could and will undoubtedly occur because it clearly appears that 40-3113 (*a*) is designed so that the insured is in no worse position as a tort claimant than if K. A. I. R. A. had not been enacted. The insured is afforded prompt payment of PIP benefits regardless of fault and he may, if he chooses, pursue tort recovery without subjecting any of his PIP payments to insurer's reimbursement by either subtraction or repayment.

In the case at bar, plaintiff included loss of wages and medical expenses, together with nonpecuniary losses, in her petition filed in her action against Hill and Harris. She, not Farmers, made the decision to include those elements of damages for which she had received payment. She had control of the action which was filed. Her insurer had no right of choice in the matter. If Farmers had also been the insurance carrier of Harris, instead of Patrons, then under plaintiff's theory it would be compelled to pay an attorney's fee for liquidating a lien against itself.

Plaintiff's counsel has directed our attention to the use of the plural possessive "attorneys'" in the second sentence, whereas the singular "attorney's" is used in the first sentence. Plaintiff proposes that this indicates a concept of two attorney's fees arising in a reimbursement by repayment situation. We attach no significance to the position of the apostrophes in the two situations. The apostrophes were used in both instances merely to mark the possessive case. The plural "fees" follows the possessive case of the noun attorney, in both instances. As previously stated, we are convinced the legislature intended the same effect whether PIP benefits have been received or remain payable. There undoubtedly will be cases where PIP benefits have been received in part and remain payable in part due to loss of wages or medical expenses extending over a period of time. We see no rational reason, within the purposes of the act, to distinguish, in this regard, between those insured who have received PIP benefits and those who have not.

As we have previously indicated, clauses [C] and [D], of both sentences, have no bearing on the issue of attorney's fees, but only operate to limit subtraction or repayment to damages recovered which are duplicative of PIP benefits received or payable.

K. S. A. 1975 Supp. 40-3113, as written, is in harmony with the Keeton and O'Connell proposals and the overall purposes of the

K. A. I. R. A. as statutorily declared in K. S. A. 1975 Supp. 40-3102 and as stated by this court in *Manzanares* and *Farm & City*.

We cannot disagree with the argument of plaintiff's counsel that to some extent, at least, the statute appears to work an injustice where—as here—the claimant has borne the expense of discovery depositions and her counsel has rendered the services necessary to bring about a settlement, while the insurer has sat on the sidelines, yet reaps the benefits of reimbursement. But as the trial court noted, whether the result is fair to the insured claimant is for the legislature to decide and it has spoken. This court does not decide nor weigh the beneficial results flowing from any particular legislative policy. (*Manzanares v. Bell*, supra; and *Williams v. City of Wichita*, 190 Kan. 317, 374 P. 2d 578.)

The judgment is affirmed.

MILLER, J., concurring and dissenting: I concur with paragraph No. 5 of the syllabus and with corresponding portions of the majority opinion. Two lawsuits should not be made out of one cause of action. The claims for medical expense and loss of wages should not be severed from claims for pain and suffering, property damage, and other loss, when all claims arise out of the same occurrence. Thus an injured person who has received PIP payments from an insurance carrier, and who opts to bring suit against a third party in an attempt to recover damages, should make claim for all damages he or she has sustained, and which have a common origin. Any "duplicative" recovery is held in trust for the insurance carrier.

I respectfully disagree, however, with paragraph No. 10 of the syllabus and corresponding portions of the opinion. The effect of the court's construction of K. S. A. 1975 Supp. 40-3113 (*a*) is to require an injured insured, who seeks to recover damages against a third person, to bear all of the costs of the litigation—while giving the injured person's PIP insurance carrier total reimbursement without effort or cost. To be sure, the insurance carrier is entitled to reimbursement, but where, as here, the insured has fought the battle with the carrier's knowledge and acquiescence, and without its help, the carrier should in all equity be required to bear a proportionate share of the expense.

The policyholder pays a premium for PIP coverage. If the policyholder sustains injury and receives PIP benefits, he or she must—under the majority's holding—assume all of the costs and

expenses of any litigation undertaken in order to recover against the third person who caused the loss. When premium, lawyer's fees, and expenses of suit are deducted, the insured realizes *less* than would have been the case without PIP insurance. I do not so read the statute, and respectfully suggest that such a construction was not intended by the legislature and is neither required nor warranted.

FATZER, C. J., joins in the foregoing concurring and dissenting opinion.

SCHROEDER, J., concurring and dissenting: I join in the concurring and dissenting opinion written by Miller, J., but would like to add my reasons for construing K. S. A. 1975 Supp. 40-3113 (*a*) contrary to the construction placed upon it by the court.

The question presented is whether the defendant-appellee, Farmers Insurance Company, Inc., insurer of the plaintiff-appellant, is entitled to reimbursement, pursuant to 40-3113 (*a*), *supra*, in the full amount of personal injury protection (PIP) benefits previously paid to the plaintiff without a proportionate deduction for attorneys' fees and costs of litigation.

The general purpose and application of the Kansas Automobile Injuries Reparations Act (KAIRA) is stated in the Act itself and in our prior decisions.

It was said in *Manzanares v. Bell*, 214 Kan. 589, 522 P. 2d 1291, that one of the obvious purposes of the legislature in limiting recovery under the threshold provision was clearly to eliminate minor claims for pain and suffering. The suggestion that an insured person under "no-fault" receives an amount equal to that which would have been recovered under the common law is illusory because it infers that the insured has been "given" the PIP benefits. Actually the insured has not been "given" anything, he has merely received a contractual benefit *for which he paid a premium*.

In K. S. A. 1975 Supp. 40-3102 the legislature states:

"The purpose of this act is to provide a means of compensating persons promptly for accidental bodily injury arising out of the ownership, operation, maintenance or use of motor vehicles in lieu of liability for damages to the extent provided herein."

Our court also discussed the purpose of the Act in *Farm & City Ins. Co. v. American Standard Ins. Co.*, 220 Kan. 325, 552 P. 2d 1363, where the court stated:

" . . . [T]he purpose of the Kansas automobile injury reparations act is to make personal injury protection insurance mandatory by requiring

every owner of a motor vehicle to obtain first party coverage for personal injury protection benefits payable by his own insurance company." (p. 329.)

Thus, three recognized purposes emerge from the Act as interpreted by the court:

(1) To compensate persons promptly for accidental bodily injury;
(2) To discourage only the filing of minor claims for nonpecuniary loss; and
(3) To make PIP insurance mandatory.

The payment of an attorney's fee as applied to PIP benefits under the Act is first mentioned by the legislature in K. S. A. 1975 Supp. 40-3111 (*b*). It reads in part:

"An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. *The attorney's fee shall be a charge against the insurer or self-insurer in addition to the benefits recovered,* if the court finds that the insurer or self-insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment." (Emphasis added.)

In my opinion, the legislative intent expressed in the foregoing section of the statute is carried through and expressed in 40-3113 (*a*), *supra.*

The terms of K. S. A. 1975 Supp. 40-3113 (*a*) contemplate "subtraction" or "reimbursement" in the following situations: In the first sentence a subtraction applies where damages are recovered before PIP benefits are received. There is no right of subtraction merely because a liability claim exists. However, once damages are recovered from the wrongdoer "a subtraction shall be made to the extent of the recovery, less reasonable attorney's fees and other reasonable expenses incurred in effecting the recovery."

In the second sentence if damages are recovered from the wrongdoer *after* PIP benefits have been received "claimant shall repay . . . a sum equal to the benefits received, but no more than the recovery, exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery."

Both "subtraction" and "reimbursement" are limited by the following general proviso "but only to the extent that the injured person has recovered said damages from the tortfeasor . . . which are duplicative of personal injury protection benefits payable" or "received."

This section of the statute, in its entirety, was designed to prevent double or duplicative recovery. (*Farm & City Ins. Co. v.*

*American Standard Ins. Co.*, supra; and *Manzanares v. Bell*, supra.) It is abundantly clear that the provisions of 40-3113 (*a*) with respect to "subtraction" and "reimbursement" *are confined exclusively to PIP benefits.*

The legislative design is accomplished by the following formula for reimbursement: First, the amount of recovery which is duplicative of PIP benefits is determined, which in no event may exceed the amount received by way of settlement or judgment; second, a proportionate amount of reasonable attorney's fees and expenses are deducted from the reimbursable PIP benefits, and the insured-claimant's portion of the recovery, if any; third, the respective balances, after deduction for fees and expenses, are paid to the PIP carrier and claimant.

This formula accomplishes the intent of the legislature. In exchange for *premiums paid* by Kansas insureds, the PIP carrier provides prompt payment. Thereafter, if the insured is successful in obtaining a recovery of damages for *the fault of another*, the insurer is granted a limited right of reimbursement out of the recovery, after a deduction for its proportionate share of fees and expenses. This seems fair and consistent with the purpose of the Act. The full benefits promised and paid for by the insured claimant are provided, double recovery is prevented, and the insurance company justly pays a fair share of the cost of collecting its money where the injury to the plaintiff was caused by the *fault of another.*

Where the injured plaintiff is required to pay the entire cost of recovering PIP benefits paid by his insurance carrier, the purpose of the No-Fault Act is violated.

I shall resort to the facts in the case of *Jaremko v. Jones*, 221 Kan. 444, 560, P. 2d 136, because the facts there presented clearly disclose the issue untarnished. The plaintiff there settled her damage action for $35,315. Her insurance carrier paid and the plaintiff received PIP benefits of $5,315. The trial court held the entire $5,315 must be repaid and that the full amount recovered as damages ($35,315) was subject to fees of one-third (⅓), or $11,772, even though the plaintiff actually received only $30,000 as net damages. There the insurance carrier intervened claiming the entire $5,315 remaining on deposit with the clerk, when the plaintiff filed and served her motion for final distribution of the remaining $5,315 retained by the clerk. The plaintiff's motion recited that $1,771.67 should be applied to the plaintiff's attorney as and for a reasonable

attorney's fee and the sum of $3,543.33 to the intervenor, as its distributive portion of amounts paid as personal injury protection benefits to the plaintiff. In my opinion, the order of the trial court for distribution of the full $5,315 to the intervenor was erroneous.

The net result of the court's holding in *Jaremko* is that the plaintiff has effectively netted only $3,543 as PIP benefits, not the $5,315 to which she was entitled under the Act and under her policy of insurance.

One of the statutory purposes of "no-fault" is to provide "payment of compensation." As remedial legislation the "No-Fault" Act is to be liberally construed to provide the intended benefits. Conversely, any interpretation of other sections of the Act which detracts from that purpose must be narrowly construed against the PIP carrier. (*Clayton v. Alliance Mutual Casualty Co.*, 212 Kan. 640, 512 P. 2d 507.)

The statute clearly recognizes that reasonable attorneys' fees and expenses are to be paid. The only question is whether such costs should be paid by the insured or by the PIP carrier. Liberally construed the Act clearly requires that the plaintiff actually receive and keep the full amount of her PIP benefits. Thus, the cost of securing reimbursement must be borne by the insurance carrier of the insured. Any other construction unreasonably detracts from the statutory purpose.

The grammatical structure of the section of the statute here in question requires payment of fees and expenses from reimbursable PIP benefits. When the legislature provided for reimbursement "exclusive of reasonable attorneys' fees and other reasonable expenses incurred in effecting the recovery," to what "recovery" was it referring? Fees on the recovery of damages; on the recovery of reimbursable PIP; or both? The concept of single versus dual recovery seems important here.

In the first sentence when subtraction is involved, the PIP carrier has no financial interest in the recovery, since PIP benefits have not been paid. Thus the claimant effects but one recovery—his or her damages. Here, the legislature used the term "attorney's fees" (*singular possessive*).

However, in the second sentence when reimbursement is involved, the "recovery" is divided between the claimant and the PIP carrier. Thus the claimant effects a dual recovery, that is,

damages and reimbursable PIP benefits. In this situation the legislature uses the same words—"attorneys' fees" (plural possessive)—but changes the *punctuation*.

Unquestionably, use of the plural possessive "s'" was volitional, not accidental, and was intended to refer to *two* attorney's fees— one on the duplicative PIP benefits recovered for the insurer and another on the claimant's non-duplicative damages.

The use by the legislature of two expressions, "less" versus "exclusive of," is insignificant. In the first sentence of the section of the statute in question dealing with subtraction, the term "less" was used as opposed to the use of the words "exclusive of," in the second sentence dealing with reimbursement. When reimburse- reasonable attorneys' fees and expenses. ment of PIP benefits should be in full, not taking into account ment is involved, the plaintiff's insurance carrier urges that repay-

This construction is effective only when the words "exclusive of" are isolated from the rest of the statute and given a strict literal interpretation. Under general rules of statutory construction the various provisions of the statute *in pari materia* must be construed together with a view of reconciling and bringing them into workable harmony, if it is reasonably possible to do so. (*Callaway v. City of Overland Park*, 211 Kan. 646, 508 P. 2d 902; and *Fleming Company v. McDonald*, 212 Kan. 11, 509 P. 2d 1162.)

To adopt the strict literal meaning of "exclusive of" would nullify other provisions of the statute, previously discussed, dealing with mandated payment of compensation, dual attorneys' fees and recovery of duplicative PIP benefits. Interpreting the statute to mean "minus" is not inconsistent with the common use of the word, and would harmonize the second sentence to conform with the terms of the first. This in my opinion, is the construction consistent with the intended sense and spirit of the Act.

It is respectfully submitted the plaintiff's insurance carrier is entitled to reimbursement, pursuant to K. S. A. 1975 Supp. 40-3113 (*a*), for personal injury protection benefits previously paid to the plaintiff after a proportionate deduction is made for the attorney's fee and costs of litigation attributable to PIP benefits which are duplicative of recovery.

FATZER, C. J., and MILLER, J., join in the foregoing concurring and dissenting opinion.